487 A.2d 841

**COMMONWEALTH of Pennsylvania**

**v.**

**Shawna LORE, a/k/a Magdalene Lore, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 21, 1983.

Filed Dec. 21, 1984.

Petition for Allowance of Appeal Denied July 18, 1985.

46

48

Robert T. Panowicz, Wilkes-Barre, for appellant.

Joseph Giebus, Assistant District Attorney, Wilkes-Barre, for Commonwealth, appellee.

Before SPAETH, President Judge, and WIEAND and MONTEMURO, JJ.

MONTEMURO, Judge:

Following trial by jury in the Court of Common Pleas of Luzerne County, appellant, Shawna Lore, was found guilty

of the following offenses: criminal conspiracy to commit criminal mischief; [1] criminal mischief; [2] criminal conspiracy to commit abuse of corpse; [3] abuse of corpse; [4] criminal conspiracy to hinder apprehension or prosecution; [5] and hindering apprehension or prosecution. [6]

Appellant's timely filed motion for a new trial and/or in arrest of judgment was denied and appellant was sentenced by the Honorable Arthur D. Dalessandro to six (6) consecutive terms of imprisonment with a minimum total duration of eleven (11) years and a maximum total duration of twenty-two (22) years.

Thereafter, appellant's petition to modify sentence was denied following a hearing and this appeal ensued. Appellant has alleged, and we review herein, the following assignments of error: (1) the suppression court's failure to suppress certain inculpatory statements made by appellant; (2) the suppression court's limiting appellant's cross-examination of a witness at the suppression hearing; (3) the suppression court's refusal to grant appellant a continuance to further develop evidence pertinent to the suppression hearing; (4) the lower court's refusal to grant appellant's demurrer and her motion in arrest of judgment, (5) the lower court's admission into evidence of a picture of the decedent; (6) the lower court's determination of the grade of the charge of hindering apprehension or prosecution as a felony of the third degree; (7) the lower court's imposition of consecutive sentences on the separate criminal conspiracy counts; (8) the alleged excessiveness of the sentences imposed by the lower court; (9) the alleged inadequacy of the statement of reasons for the sentences imposed; and (10) the lower court's reliance on allegedly improper considerations in sentencing appellant.

1. 18 Pa.C.S. § 903.
2. *Id.* § 3304.
3. *Id.* § 903.
4. *Id.* § 5510.
5. *Id.* § 903.
6. *Id.* § 5105.

We affirm in part, reverse as to the convictions for criminal conspiracy to commit criminal mischief and criminal mischief, and vacate as to the sentence imposed for criminal conspiracy to commit abuse of corpse.[7]

This case arose out of the events immediately following the shooting death of John McNulty. In the early morning hours of November 8, 1979, McNulty accompanied the appellant, whom he had met earlier that night, to the residence of George Peters at 61 Carbon Lane in Wilkes-Barre, Luzerne County. Once inside the residence, a dispute ensued between McNulty and Raymond Ziomek, appellant's boyfriend. Ziomek shot and killed McNulty.

Over the course of the following two days, appellant, George Peters, and John Noss, a friend of Ziomek, assisted Ziomek in the concealment and/or destruction of all evidence of McNulty's death. At appellant's trial, the combined testimony of Peters and Noss established the following with regard to appellant's involvement: (1) appellant helped Ziomek and Peters clean the room in which McNulty had been shot; (2) appellant cleaned the cellar steps of the Peters residence over which McNulty's body was dragged; (3) appellant accompanied Noss and Ziomek to the Wyoming Valley Mall where they obtained an ax, Drano and lye, and then all three returned to the Peters residence; (4) appellant removed a sheet of plastic covering McNulty's body as it lay in the cellar of the Peters residence; (5) appellant untied a belt which had been used to bind McNulty's hands; (6) appellant went through McNulty's pockets; (7) as Noss and Ziomek dismembered McNulty's body, appellant held garbage bags open in order for the head, arms and legs to be placed in them; (8) appellant understood that the bags were to be thrown into the Susquehanna River; (9) appellant was in the cellar constantly throughout the dismemberment; (10) appellant cleaned the cellar floor, where the body had lain, with buckets of water and by shoveling dirt; (11) appellant carried bags containing the disassembled compo-

---

7. Appellant was sentenced to three terms of one (1) to two (2) years on these three convictions.

nents of McNulty's body up from the cellar; (12) appellant placed the bag containing McNulty's head into a bucket; (13) appellant carried bags containing body parts out to McNulty's automobile; (14) after the bags were loaded into the automobile, appellant and Noss accompanied Ziomek as he drove McNulty's automobile to the Breslau Bridge over the Susquehanna River; (15) Ziomek and Noss tossed McNulty's torso into the river and appellant threw the remaining bags in; and (16) Ziomek, Noss and appellant then proceeded to a coal stripping area where Ziomek set fire to McNulty's automobile.

On November 23, 1979, appellant was arrested on matters unrelated to the McNulty homicide. However, appellant was thereafter questioned regarding that homicide and on November 28 and 29, respectively, appellant made two inculpatory statements.

As related by Trooper Charles Casey of the Pennsylvania State Police on direct examination at appellant's trial, the substance of appellant's November 28, 1979 statement included the following assertions: (1) after arriving at the Peters residence with McNulty, appellant watched as Ziomek and Peters argued; (2) Ziomek shot McNulty; (3) Ziomek dragged McNulty's body into the cellar and covered it up; (4) Noss and Ziomek later dismembered the body and placed it in garbage bags; (5) Noss and Ziomek carried the bags to McNulty's automobile; (6) Noss, Ziomek and appellant traveled to the Breslau Bridge and the bags were tossed into the river; and (7) Ziomek burned the car.

Appellant's November 29, 1979 statement was recorded on tape and the tape was subsequently played before the jury at appellant's trial. This statement included the following additional inculpatory remarks: (1) appellant cleaned the steps and the rug going into the cellar of the Peters residence after Ziomek dragged McNulty's body over them; (2) appellant accompanied Noss and Ziomek to the Wyoming Valley Mall while they obtained a hatchet, Drano and lye; (3) appellant, Noss and Ziomek later went down into Peters' cellar and Ziomek announced his intent to dismember

McNulty's body; (4) appellant removed the plastic sheet and the debris covering the body; (5) appellant got garbage bags from upstairs and threw them into the cellar; (6) appellant was upstairs and heard "cutting" noises from the cellar; (7) appellant took a bucket of water into the cellar and poured it over a spot where the body had been laying; (8) after Noss and Ziomek finished dismembering the body, appellant again took a bucket of water into the cellar, poured it over the remaining blood stains, and shoveled dirt over the spot where the body had been dismembered; and (9) appellant threw one of the bags in the river.

Immediately prior to the commencement of appellant's trial on November 17, 1980, her counsel made the following oral motion:

The second motion that I would make at this time is that this morning from the Public Defenders' Office, a Judy Kleiman and a Russ Thomas had indicated that at the time that Mrs. Lore had made certain statements to the District Attorney that they had evidence of some needle marks on her arms and that they indicated that she had not slept for a number of days or hours. At this time I would present the Court with an oral motion on a suppression of the statements given by Mrs. Lore. I found that out this morning and I did not have an opportunity to present a written motion to the Court for the suppression of that evidence.

N.T., November 17, 1980, at 16. (Appellant had earlier filed omnibus pretrial motions, however, these did not contain a motion to suppress.) The lower court permitted a hearing to be held on the above motion; at the conclusion of which, the motion was denied.

 Appellant's first assignment of error alleges that the suppression court erroneously denied appellant's motion to suppress the inculpatory statements made by her on November 28 and 29, 1979. Appellant argues that, because she was tired and experiencing the physical and psychological effects of narcotic withdrawal, her November 28 and 29, 1979 statements were not intelligently, knowingly and vol-

untarily made and, therefore, were not the product of a constitutionally effective waiver of the rights afforded her under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[8]

In reviewing the action taken by the suppression court in admitting appellant's statements into evidence, we are guided by the standard enunciated in *Commonwealth v. O'Bryant*, 479 Pa. 534, 388 A.2d 1059, *cert. denied*, 439 U.S. 990, 99 S.Ct. 589, 58 L.Ed.2d 664 (1978):

> [T]his Court must consider only the evidence presented by the Commonwealth and so much of the evidence for the defense as fairly read in the context of the record as a whole, remains uncontradicted.... Where the suppression court's findings have ample support in the record, they may not be disturbed on appeal.

*Id.*, 479 Pa. at 537, 388 A.2d at 1061; *see also Commonwealth v. Taylor*, 494 Pa. 399, 403, 431 A.2d 915, 917 (1981).

■ Moreover, we are mindful of the fact that the admissibility of the challenged statements need not be proven beyond a reasonable doubt. It is sufficient if the Commonwealth satisfies the court by a preponderance of the evidence that the legal requirements for admissibility have been met, that is, that appellant herein waived her constitu-

---

8. In her brief before us, appellant additionally argues that: (1) the interrogating officers, Trooper Charles Casey of the Pennsylvania State Police and Detective Chester Dudick of the Wilkes-Barre Police Department, gave appellant inadequate constitutional warnings prior to the November 28, 1979 statement and, therefore, appellant's waiver cannot be viewed as "explicit" under *Commonwealth v. Bussey*, 486 Pa. 221, 404 A.2d 1309 (1979) and *Commonwealth v. Nixon*, 288 Pa.Super. 78, 431 A.2d 296 (1981); (2) since there was not an explicit waiver of appellant's constitutional rights preceding the first statement and it therefore was inadmissible, the November 29, 1979 statement, given fifteen (15) hours later, was the by-product of that "primary taint" and was similarly inadmissible; and (3) appellant was never sufficiently informed, prior to either statement, of the crimes for which she was under investigation or which would, or could, be charged against her.

Appellant's pretrial motion to suppress did not apprise the suppression court of these specific allegations and, therefore, appellant has not preserved any related arguments for review. *See* Pa.R.Crim.P. 323(d); *see also Commonwealth v. Jones*, 487 Pa. 183, 409 A.2d 25 (1979); *Commonwealth v. Menginie*, 312 Pa.Super. 293, 458 A.2d 966 (1983).

tional rights voluntarily, knowingly and intelligently. *Taylor, supra; Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426 (1968).

The Commonwealth called three witnesses to testify at the suppression hearing, Trooper Casey, Detective Chester Dudick of the Wilkes-Barre Police Department and Detective Frank Ratchford of the Kingston Police Department, all three of whom had contact with appellant between November 23 and 29, 1979, the former two having been present when appellant made the statements in question. As to the apparent physical and psychological condition of appellant at the time of the November 28, 1979 statement, Detective Dudick testified that appellant appeared normal and at ease. Appellant was coherent and responded intelligently to the questions posed. Detective Dudick testified that appellant did not mention any drug withdrawal symptoms or complain of any discomfort. Trooper Casey essentially reiterated Detective Dudick's observations regarding appellant's condition on November 28. As to appellant's condition at the time of the November 29, 1979 statement, Detective Dudick testified that appellant was asked if she was on drugs and responded negatively. Appellant did not complain of any withdrawal symptoms. Detective Dudick further testified that he felt there was no reason to ask appellant questions concerning any possible sleeplessness because she appeared very alert. Trooper Casey similarly testified that, on November 29, appellant appeared "well-rested." Detective Ratchford testified that, on the dates when he met with appellant, she did not "shake", appear "nauseous" or mention any withdrawal symptoms.

Appellant introduced medical records from the Luzerne County Women's Detention Center, where appellant was incarcerated on the dates in question. These records indicated that, on November 24, 1979, there were "needle marks" on appellant's arms. During the suppression hearing, appellant exhibited to the court three needle marks, one on the inside of each elbow and one on the back of her right hand. Appellant testified to a long history of drug usage

and that, during the week immediately prior to her arrest on November 23, 1979, she was injecting morphine or demerol at least every three hours. However, her testimony indicated that her usual drug intake was significantly less prior to that week. After describing the symptoms of morphine and demerol withdrawal as including shaking, muscle spasms, nausea, vomiting and hot/cold flashes, appellant testified that, on the dates in question, she was only "shaky" and "nauseous". Appellant further testified that between November 24 and 29, 1979, her nighttime sleep was fitful.

The suppression court found:

[B]oth statements given by the defendant [appellant] were made voluntarily, intelligently, knowingly and understandingly.... [T]here was no mental or physical disease or disability existing at the times of the giving of both statements. ... Defendant was in full command of her faculties and knew very well what she was doing, what the subject matter was, and what the contents of her statements were and their possible future use.

N.T., November 17, 1980, at 127.

■ After a careful review of the record and in light of the legal standards set forth above, we find that the suppression court's admission of appellant's November 28 and 29, 1979 statements was proper.

Appellant's next assignment of error contends that the suppression court erred in limiting appellant's cross-examination of Detective Ratchford regarding the symptoms of withdrawal from various narcotics.

The pertinent portions of the Commonwealth's direct examination of Detective Ratchford proceeded:

Q. Have you had occasion to experience or have you had occasion to observe people under the influence of drugs?

A. Yes, I have.

Q. Specifically, Demerol and Morphine?

A. Yes, I have.

Q. Based upon that experience, would you tell us whether or not the Defendant [appellant] exhibited any of those symptoms?

A. Not in my opinion, not at all.

N.T. November 17, 1980, at 113.

On cross-examination, Detective Ratchford was asked:

Q. Well, let me ask you about Demerol, specifically, however. What are the withdrawal symptoms of Demerol as opposed to Cocaine, Heroin, or other drugs?

A. I believe—

MR. EICHORN [Assistant District Attorney]: May it please the Court, I asked on direct examination, specifically, Morphine and Demerol.

THE COURT: Objection sustained. You direct the witness to his—

MR. PANOWICZ [Defense Counsel]: Okay. All right. Let's put it this way—

THE COURT: —reference to Demerol and Morphine.

BY MR. PANOWICZ:

Q. Demerol and Morphine as opposed to Cocaine and Heroin and the other ones, the one that you referred to that you were experienced in? How are those symptoms different from the others?

MR. EICHORN: Again, Your Honor, it's the same question—

THE COURT: Objection is sustained.

*Id.* at 115–16.

■ Ordinarily, cross-examination of an adverse witness is limited to matters brought out on direct examination, with few exceptions. *Commonwealth v. Katsafanas*, 318 Pa.Super. 143, 464 A.2d 1270 (1983); *Commonwealth v. Ervin*, 262 Pa.Super. 322, 396 A.2d 776 (1978). Although it is well established that courts must allow latitude as to the scope of cross-examination, *Commonwealth v. Thorpe*, 270 Pa.Super. 221, 411 A.2d 497 (1979), it is equally well established that, "The scope of cross-examination is largely within the sound discretion of the trial judge, and even if a

ruling is erroneous, the error is not grounds for reversal unless it results in apparent injury." *Commonwealth v. Donnelly*, 233 Pa.Super. 396, 417, 336 A.2d 632, 644 (1975), *cert. denied*, 424 U.S. 974, 96 S.Ct. 1477, 47 L.Ed.2d 744 (1976).

■ Appellant's attempt, on cross-examination, to test Detective Ratchford's knowledge regarding the symptoms of withdrawal from drugs other than those inquired about on direct examination was clearly beyond the literal scope of the direct examination. The suppression court's consequent limitation of the cross-examination was therefore well within its discretionary power. In addition, appellant has failed to allege, and we are unable to discover, any manifest injury to appellant's arguments as a result of that limitation. We therefore find the suppression court's ruling on the Commonwealth's objections to have been proper.

■ Appellant's third assignment of error challenges the suppression court's refusal to grant her a continuance to further develop pertinent evidence. We find this refusal to have been entirely proper.

In an attempt to elicit information regarding the physical and mental condition of appellant on November 28 and 29, 1979, appellant called as a witness Judy Kleiman, an employee of the Luzerne County Public Defender's Office. Appellant questioned this witness concerning her observations of appellant on or about the dates in question. The witness possessed no first-hand knowledge, having not been employed by the Public Defender's Office at the time. Upon learning this, appellant requested an opportunity to subpoena certain medical records kept by the Luzerne County Women's Detention Center, which the suppression court denied. The following exchange ensued:

MR. PANOWICZ: Your Honor, we cannot proceed any further.

THE COURT: You have given two names this morning. You've given the name of this witness and another person in the Public Defender's Office. It was my im-

pression that they had observed certain physical characteristics on the arm of the Defendant on November 28th and/or 29th, 1979.

MR. PANOWICZ: Yes, Your Honor, that was my observation, too. Now, I find out the notation of needle marks was not made by this person, individually, but was made from calling up the Women's Detention Center. N.T., November 17, 1980, at 73–74.

■ Appellant asserts that she was afforded an insufficient amount of time to prepare for the suppression hearing. Appellant relies upon *Commonwealth v. Ross*, 465 Pa. 421, 350 A.2d 836 (1976) and *Commonwealth v. Flynn*, 248 Pa.Super. 62, 374 A.2d 1317 (1977). We find these two cases to be inapposite in that both concern situations where the individual counsel were afforded a single day or less to prepare for trial. Appellant's counsel herein had nearly three (3) weeks from the date of appointment, October 29, 1980, to interview witnesses and to assemble any necessary documentation.

■ Furthermore, we note that the granting of a continuance is discretionary and that the refusal to grant a continuance amounts to reversible error only if there appears to have been an extreme abuse of discretion. *Commonwealth v. Andrews*, 245 Pa.Super. 547, 369 A.2d 762 (1977). The refusal herein can, by no means, be viewed as amounting to such an "extreme" case, particularly in light of the fact that appellant was later granted an opportunity to telephone the detention center, N.T., November 17, 1980, at 108–09, and obtained the desired records. Pertinent portions were admitted into evidence and considered by the suppression court. *Id.* at 122–27.

■ Appellant further assigns as error the lower court's failure to grant a demurrer at the close of the Commonwealth's case and appellant's motion in arrest of judgment. Specifically, appellant argues that, as to all of the charged offenses, the Commonwealth's evidence was

insufficient to support a finding of appellant's guilt beyond a reasonable doubt.[9]

In assessing the merits of appellant's sufficiency claims, we apply the standard enunciated in *Commonwealth v. Lovette*, 498 Pa. 665, 450 A.2d 975 (1982), *cert. denied*, 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1025 (1983):

> The test for sufficiency of the evidence is whether accepting as true all of the evidence reviewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.... [A] claim of insufficiency of the evidence will not be assessed on a diminished record, but rather on the evidence actually presented to the finder of fact rendering the questioned verdict.

*Id.*, 498 Pa. at 669, 450 A.2d at 977 (citations omitted).

 After a careful review of the entire record in this case, we find that there was overwhelming support for the denial of a demurrer and for a finding of appellant's guilt beyond a reasonable doubt on the charges of abuse of corpse, hindering apprehension or prosecution,[10] and related criminal conspiracies.

9. Appellant frames her general position as "the verdict was against the weight of the law and evidence." Nevertheless, her supporting arguments go to the sufficiency of the evidence and appellee responds in its brief as if appellant's claims are directed at the sufficiency of the evidence. We, therefore, have reviewed her arguments as challenging sufficiency.

Furthermore, this case is not controlled by this court's decision in *Commonwealth v. Holmes*, 315 Pa.Super. 256, 461 A.2d 1268 (1983). Therefore, we find that appellant's boilerplate post-trial motion regarding "sufficiency" was properly preserved by her brief and argument before the lower court and by her brief before this court. *See Lower Court Opinion*, at 10.

10. Due to the novel nature of one of appellant's arguments supporting her general position that the Commonwealth's evidence was insufficient as to the hindering apprehension or prosecution charge, we take this opportunity to articulate our analysis.

However, we agree with appellant's position as to the criminal conspiracy to commit criminal mischief and the criminal mischief charges, arising out of the destruction of McNulty's automobile, for the following reasons:

 The offense of criminal conspiracy is set forth in the Crimes Code as:

**Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

The substantive offense of hindering apprehension or prosecution is defined as follows:
**Hindering apprehension or prosecution**
(a) **Offense defined.**—A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime, he:
(1) harbors or conceals the other;
(2) provides or aids in providing a weapon, transportation, disguise or other means of avoiding apprehension or effecting escape;
(3) conceals or destroys evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence;
(4) warns the other of impending discovery or apprehension, except that this paragraph does not apply to a warning given in connection with an effort to bring another into compliance with law; or
(5) volunteers false information to a law enforcement officer.
18 Pa.C.S. § 5105.
Appellant asserts that the Commonwealth failed to satisfy its burden of proof by not introducing into evidence facts establishing that an earlier crime was indeed committed. Appellant reasons that without proof of an earlier crime, one cannot be held to have violated section 5105. We do not read section 5105 as requiring that such an element be proven.
Evidence is sufficient to sustain a conviction for a violation of section 5105 if the Commonwealth establishes, and a jury so finds, that beyond a reasonable doubt the appellant *intended* to hinder the apprehension or prosecution of another by performing any of the enunciated acts. This interpretation is wholly consistent with the comments to Model Penal Code § 242.3 (1962), which served as the prototype for section 5105,
The majority of recent codification efforts have agreed with the Model Code position that this offense should be recharacterized as an obstruction of justice and accordingly have dispensed with the necessity that it be shown that the putative offender actually committed a crime and that the person rendering assistance was aware of that fact.
Model Penal Code § 242.3 comment 3 (1980).

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a). It is well established that a criminal conspiracy is a common understanding, either tacit or express, which may be proven inferentially but not by mere suspicion or conjecture. *See Commonwealth v. Azim*, 313 Pa.Super. 310, 459 A.2d 1244 (1983); *Commonwealth v. Volk*, 298 Pa.Super. 294, 444 A.2d 1182 (1982).

Insufficient evidence was presented at trial to establish a common understanding between appellant and any of the other actors to engage in, plan, attempt or solicit the crime of criminal mischief. Peters was unable to testify to any of the events occurring after the garbage bags containing the body were loaded into McNulty's automobile, since he did not accompany Ziomek, Noss and appellant after they left his residence. Appellant's own statements indicate only that she was a passenger in the automobile and participated in throwing the bags from the Breslau Bridge. Her statements do not indicate that she was cognizant of Ziomek's intent to also dispose of the automobile. Noss, the only witness capable of proving this charge against appellant, testified on direct examination that he believed that it was understood between Ziomek, himself and appellant, while they were still at the Peters residence, that the automobile would be burned. However, on cross-examination, Noss testified:

Q. ...
Now Mr. Noss, isn't it true that you did not talk about getting rid of the car at all while you were at 61 Carbon Lane [Peters' residence]?

A. He [Ziomek] said it was to be burned.

Q. Now, did this occur at 61 Carbon Lane?

A. Yes.

Q. Okay. So your best recollection here today is that while at 61 Carbon Lane, Mr. Ziomek said he was going to burn the car?

A. Yes.

Q. And who was present at that time?

A. Myself and George Peters. I believe Shawna was in the other room.

Q. Okay. So Mrs. Lore was not even present at the time that he said this, was she?

A. I don't believe so.

Q. Okay. But you do recall that he did say something while at 61 Carbon Lane?

A. Yes.

N.T., November 17, 1980, at 313. Noss also testified that he had been responsible for obtaining a jar of gasoline, which was used to burn the automobile, and for placing the jar in the automobile prior to leaving the Peters' residence.

On the basis of the record before us, there was insufficient evidence for the jury to have found, beyond a reasonable doubt, the existence of a prior agreement, involving appellant, to burn and/or destroy McNulty's automobile. We therefore reverse the conviction on the charge of criminal conspiracy to commit criminal mischief.

The substantive crime of criminal mischief is defined in the Crimes Code as:

**Offense defined.**—A person is guilty of criminal mischief if he:

(1) damages tangible property of another intentionally, recklessly, or by negligence in the employment of fire, explosives, or other dangerous means listed in section 3302(a) of this title (relating to causing or risking catastrophe);

(2) intentionally or recklessly tampers with tangible property of another so as to endanger person or property; or

(3) intentionally or recklessly causes another to suffer pecuniary loss by deception or threat.

18 Pa.C.S. § 3304(a).

At trial, Noss testified: (1) he obtained a jar of gasoline and placed it in the McNulty automobile prior to leaving the Peters residence; (2) Ziomek was the driver of the automobile from the time they left the Peters residence until they reached the location where the automobile was burned; (3) Ziomek poured the gasoline on the front and back seats of the automobile; (4) Ziomek lit a ball of paper and tossed it into the automobile; (5) appellant had already walked away prior to Ziomek's burning of the automobile; and (6) appellant had nothing to do with the burning of the automobile. This testimony conforms to appellant's November 28 and 29, 1979 statements admitted at trial.

With reference to appellant's sufficiency claim regarding the charge of criminal mischief, we find that the Commonwealth failed to produce even a modicum of evidence of appellant's guilt on this charge. There was insufficient evidentiary support for the jury's finding appellant guilty of criminal mischief and we therefore reverse the conviction on this charge.

Appellant's next assignment of error alleges that the trial court erred in admitting into evidence a picture of McNulty, taken prior to his death.[11] Appellant relies upon *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978), for the principle that only evidence which is relevant, i.e., which possesses rational probative value, is admissible and because the supreme court held therein that a picture of the homicide victim with his handicapped daughter "shed absolutely no light on the criminal episode" and was therefore inadmissible.

---

11. Appellant makes the related argument that the trial court erred in permitting McNulty's wife to testify to the quality of her marriage to McNulty. This issue was not properly preserved for our review due to appellant's failure to include it in her post-trial motions and to the lack of any apparent objection to this testimony at trial. *See* Pa.R.A.P. 302(a); Pa.R.Crim.P. 1123(a).

The lower court found in the case *sub judice* that the photograph of McNulty was not inflammatory or prejudicial and was relevant to the abuse of corpse charge. We disagree.

■ The lower court did not set forth, and the Commonwealth has failed to argue, any reasons sufficient to persuade us that the photograph in issue assisted the trier of fact in any material way. Additionally, we note that the photograph of McNulty was identified by, and admitted into evidence during the direct examination of, McNulty's widow. The prejudice to appellant resulting from these circumstances, combined with the photograph's lack of probative value, rendered it inadmissible.

■ However, we find that any error on the part of the lower court in admitting the photograph of McNulty into evidence was harmless beyond a reasonable doubt. Initially, we note that there is nothing in the record or in the briefs before us indicating that the photograph of McNulty was nearly as compelling as the photograph at issue in *Story, supra.* Furthermore, the uncontradicted evidence of appellant's guilt on the pertinent charges of abuse of corpse and the related criminal conspiracy was so overwhelming, and the prejudicial effect of the photograph of McNulty so insignificant *by comparison,* that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. *Id.,* 476 Pa. at 417, 383 A.2d at 168.

Appellant assigns as error the sentencing court's determination of the grade of the charge of hindering apprehension or prosecution as a felony of the third degree. The gradation of hindering apprehension or prosecution is directed to be as follows:

> **Grading.**—The offense is a felony of the third degree if the conduct which the actor knows has been charged or is liable to be charged against the person aided would constitute a felony of the first or second degree. Otherwise it is a misdemeanor of the second degree.

18 Pa.C.S. § 5105(b).

Appellant specifically argues that because Ziomek, the individual aided, was charged with homicide,[12] which is inclusive of the classification "involuntary manslaughter", a misdemeanor of the first degree,[13] the Commonwealth has therefore waived any right to seek a gradation of a felony of the third degree on appellant's hindering apprehension or prosecution charge. We disagree.

Due to the dearth of pertinent case law, we turn to the comments to Model Penal Code § 242.3, which served as the prototype for 18 Pa.C.S. § 5105. These comments make clear that the drafters' intent was to depart from the harsh tenets of the common law regarding "accessories after the fact", whose culpability was derivative from, and equivalent to, that of their principals. The drafters attempted to shift the focus of culpability to the "aider" and away from the "aided". Therefore, section 242.3 looks to the aider's state of mind and treats his/her behavior for what it is—obstruction of justice.

The gradation of the aider's offense is keyed to his/her knowledge of how the aided individual has been, or is liable to be, charged.

Of course, it is not necessary that the defendant know the law of the crime for which the other is sought. For this reason the grading provision for this offense requires only that the aider know that the conduct charged or liable to be charged against the other person is of the sort proscribed by one of the more serious degrees of felony.

Model Penal Code § 242.3 comment 6 (1980).

Appellant's argument is therefore misdirected. Our concern is not with how Ziomek was ultimately charged, but instead we must concern ourselves with what "the actor [appellant] knows ... is liable to be charged ..." at the time when appellant was acting in violation of section 5105.

■ The record establishes that appellant was acutely aware that her boyfriend, Ziomek, shot and killed a man. In an effort to protect Ziomek, she assisted in various

12. 18 Pa.C.S. § 2501.
13. *Id.* at 2504(b).

gruesome acts of concealment at great personal risk of penal sanctions. As stated above, appellant need only have known that Ziomek was liable to be charged with conduct "of the sort proscribed by one of the more serious degrees of felony" in order for her conduct to amount to a felony of the third degree. Appellant's behavior following the shooting indicated such knowledge.

We, therefore, find that it was not error for the sentencing court to grade appellant's hindering apprehension or prosecution conviction as a felony of the third degree.

Appellant next challenges as error the sentencing court's imposition of consecutive sentences on the separate criminal conspiracy counts.[14] Specifically, appellant argues that, on the record, there was only a single continuing conspiracy. As to the sentences imposed for criminal conspiracy to hinder apprehension or prosecution and criminal conspiracy to commit abuse of corpse, we agree.

There can be no question that a conspiratorial relationship developed between Ziomek, Noss, Peters and appellant following the shooting death of McNulty. The criminal objectives of this conspiracy were the disposing of McNulty's corpse and the concealment of related evidence.

Subsection 903(c) of the Crimes Code addresses this situation:

> **Conspiracy with multiple criminal objectives.**—If a person conspires to commit a number of crimes, he is guilty of only one conspiracy as long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

18 Pa.C.S. § 903(c).

Section 903(c) articulates a concept which is not new in American jurisprudence, " 'The conspiracy is the crime, and that is one, however diverse its objects.' " *Braverman v. United States,* 317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23

---

14. As a result of our earlier disposition regarding appellant's conviction for criminal conspiracy to commit criminal mischief, we need not reach the merits of appellant's instant argument as it relates to that sentence.

(1942), *quoting Frohwerk v. United States,* 249 U.S. 204, 210, 39 S.Ct. 249, 252, 63 L.Ed. 561 (1919). *See also* W. LaFave and A. Scott, CRIMINAL LAW § 62 (1972) ("An agreement to commit several crimes is but one conspiracy.") In *Braverman, supra,* the Supreme Court went on to explain that, "The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute...." *Id.* 317 U.S. at 54, 63 S.Ct. at 102.

More recently, the parameters of this principle have been further defined:

A single, continuing conspiracy is demonstrated where the evidence proves that the essential feature of the existing conspiracy was a common plan or scheme to achieve a common, single, comprehensive goal.... A single, continuing conspiracy may contemplate a series of offenses, or be comprised of a series of steps in the formation of a larger, general conspiracy.... Therefore, where the evidence at trial is sufficient for the jury to infer that the essential features of the existing conspiracy were a common plan or scheme to achieve a common, single, comprehensive goal or end, then the conclusion that the conspiracy was a single, continuing conspiracy is justified.

*United States v. Continental Group, Inc.,* 456 F.Supp. 704, 716 (E.D.Pa.1978), *aff'd,* 603 F.2d 444 (3d Cir.1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). *See also United States v. Hubbard,* 474 F.Supp. 64, 71–72 (D.D.C.1979); *United States v. DiPasquale,* 561 F.Supp. 1338, 1348–50 (E.D.Pa.1983).

Appellant herein relies upon *Commonwealth v. Richbourg,* 260 Pa.Super. 438, 394 A.2d 1007 (1978). In our view such reliance is not misplaced.

In *Richbourg,* appellant/defendant committed robbery in order to obtain a set of keys to a nearby restaurant, which he later burglarized. Appellant therein was charged with conspiracy to commit robbery and conspiracy to commit burglary in addition to the substantive offenses. Applying section 903(c), this court refused to uphold the separate

conviction for conspiracy to commit robbery, concluding that the robbery was a "necessary intermediate step" toward the commission of the burglary, and therefore only a single conspiracy existed.

Although it may be argued that the *Richbourg* decision is inapposite to the case *sub judice* because of the "necessary intermediate step" language, we decline to so narrowly limit the holding in that case. Rather, a careful reading of section 903(c) and of *Braverman* and its progeny leads us to the conclusion that *Richbourg* must be read as positing a more general principle in line with the literal language of section 903(c).

■ In the case before us, the co-conspirators' tacit agreement to embark on a continuous course of conduct, necessitated by the shooting of McNulty, contained within it a common scheme or design, namely, the concealment of all physical evidence of McNulty's death. The co-conspirators' acts in their effort to conceal any trace of McNulty's corpse were the multiple criminal objectives of a continuous conspiratorial relationship and each was a component of the larger common design.

In the instant case, appellant should have been sentenced on only a single charge of criminal conspiracy. *Accord Commonwealth v. Black*, 267 Pa.Super. 598, 407 A.2d 403 (1979). This court may, in its discretion, either modify the sentence imposed or remand for modification. *Richbourg, supra*, 260 Pa.Super. at 446 n. 6, 394 A.2d at 1011 n. 6.

■ In our decision to modify the sentence imposed, we are guided by section 905 of the Crimes Code:

**Grading.**—Except as otherwise provided in this section, attempt, solicitation and conspiracy are crimes of the same grade and degree as the most serious offense which is attempted or solicited or is an object of the conspiracy. An attempt, solicitation or conspiracy to commit murder

or a felony of the first degree is a felony of the second degree.

18 Pa.C.S. § 905(a). Of the substantive crimes committed by appellant in furtherance of the conspiracy, the more serious is hindering apprehension or prosecution. Appellant was sentenced to the maximum of three and one-half to seven (3½–7) years on the criminal conspiracy to commit hindering apprehension or prosecution.

We affirm this sentence and vacate the sentence imposed on the charge of conspiracy to commit abuse of corpse.

Appellant's next assignment of error alleges that the sentences imposed were generally excessive in light of her minimal participation and in light of the lesser sentences imposed upon her co-conspirators, Peters and Noss. We disagree.[15]

It is well settled law in this Commonwealth that the sentence imposed upon a charge is within the broad discretion of the sentencing judge, *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976); *Commonwealth v. DeCaro*, 298 Pa.Super. 32, 444 A.2d 160 (1982), and will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Mead*, 300 Pa.Super. 510, 446 A.2d 971 (1982). In order for a sentence to constitute an abuse of discretion, it must either exceed statutory limits or be manifestly excessive. *Commonwealth v. Rooney*, 296 Pa. Super. 288, 442 A.2d 773 (1982). Appellant has not argued that her sentences exceeded statutory limits.

As to the first branch of appellant's arguments, i.e., that her participation was minimal, we note only that, after a careful review of the record, we find the evidence adduced at trial to be overwhelmingly to the contrary. We find no manifest excessiveness in the sentence imposed.

15. Due to our earlier dispositions of the sentences reviewed herein, we are entertaining appellant's "excessiveness" arguments only as they relate to the sentences imposed for abuse of corpse, hindering apprehension or prosecution, and criminal conspiracy to hinder apprehension or prosecution.

 As to the second branch of appellant's arguments, i.e., that Noss and Peters received lesser sentences, we note that it is not an abuse of discretion for co-conspirators, accused of the same or similar crimes, to receive differing sentences. *Commonwealth v. Craft*, 304 Pa.Super. 494, 450 A.2d 1021 (1982). This is particularly true when, as in the case *sub judice*, other co-conspirators, e.g., Noss and Peters, have provided valuable assistance to the Commonwealth in the bringing of related prosecutions. We therefore find this second branch of appellant's arguments to be without merit.

 Appellant further alleges that the sentencing judge failed to adequately explain his reasons for the sentences imposed. *See* Pa.R.Crim.P. 1405(b); *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977). During the sentencing colloquy, the sentencing judge need not specifically cite or include the language of the Sentencing Code,[16] he must only demonstrate that the court has considered the factors specified in the Code. *Commonwealth v. Wilson*, 306 Pa.Super. 372, 452 A.2d 772 (1982); *Commonwealth v. Franklin*, 301 Pa.Super. 17, 446 A.2d 1313 (1982).

 In light of the Sentencing Code standards [17] and the sentencing guidelines,[18] and after a careful review of the sentencing colloquy herein, we find that the announced reasons were more than adequate. The reasons stated demonstrated the sentencing judge's prolonged consideration of the salient factors relevant to appellant's character, prior record, rehabilitative needs, the circumstances of the offenses, and the need to protect the public. *See Rooney, supra.*[19]

16. 42 Pa.C.S. § 9701 *et seq.*

17. *Id.* at 9721(b).

18. 209 Pa.Code § 303.1 *et seq.*

19. Appellant's related assignment of error, i.e., that the sentencing judge failed to consider the minimum sentence necessary for the protection of the public and the rehabilitative needs of appellant, we find to be without support in the record before us.

Appellant's final assignment of error challenges the sentencing judge's allegedly improper considerations in sentencing appellant. At the sentencing hearing, the judge posed the following question to appellant's counsel, "Do you think that Mr. McNulty might be alive today if Miss Lore wasn't the person who set the ultimate events in motion?" N.T. March 31, 1982, at 15. The sentencing judge went on to state, "That concerns me very seriously." *Id.*, 301 Pa.Superior Ct. at 16, 446 A.2d 1313.

 The evidence adduced at trial establishes that appellant was indeed the individual who led McNulty to the Peters residence on that fateful night. She did "set the ultimate events in motion." We find the sentencing judge's consideration of that fact to be logical, and not an impermissible factor.[20]

We affirm the judgments of sentence imposed by the lower court on the charges of abuse of corpse, criminal conspiracy to hinder apprehension or prosecution and hindering apprehension or prosecution. We reverse the convictions for criminal conspiracy to commit criminal mischief and criminal mischief, and we vacate the judgment of sentence imposed by the lower court on the charge of criminal conspiracy to commit abuse of corpse.[21]

Affirmed in part, reversed in part, vacated in part.

20. Appellant relies on *Commonwealth v. Cowan*, 275 Pa.Super. 341, 418 A.2d 753 (1980). However, we find *Cowan* to be inapposite in that this court therein found it necessary to remand the case due to what may have been inaccurate information relied upon by the sentencing judge. No such inaccuracy is herein alleged and the fact at issue is well supported in the record.

21. In this opinion, we have declined to discuss appellant's allegations that the court erred in refusing appellant's requested jury instructions on the issue of duress, on the issue of mere presence at the scene of a crime as insufficient evidence to convict, and on intent. As to the first two of these requested instructions, the lower court concluded that there was insufficient evidence to justify the giving of these instructions. As to the last of these requested instructions, the lower court concluded that its instruction, as given, was adequate and, furthermore, that this particular assignment of error had not been properly preserved. We find that the lower court opinion adequately addresses and disposes of these contentions. *See Lower Court Opinion* at 7–10.