J-A20043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARY ELLEN ROBERTS | : | |
| | : | |
| Appellant | : | No. 3171 EDA 2023 |

Appeal from the Judgment of Sentence Entered August 31, 2023
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0001363-2022

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:               **FILED NOVEMBER 13, 2024**

Appellant, Mary Ellen Roberts, appeals from the August 31, 2023 judgment of sentence entered by the Chester County Court of Common Pleas following her convictions for Hindering Prosecution and Tampering with Evidence.[1]  After careful consideration of Appellant's challenges addressing the sufficiency of the evidence, *corpus delicti*, and hearsay, we affirm the judgment of sentence.

The following is the relevant factual and procedural history relating to Appellant's convictions for destroying evidence to protect her son, Michael Roberts ("Son"), from prosecution for drug crimes.  In late June and early July 2021, West Chester Borough Police Detectives investigated Son for drug trafficking in coordination with the Chester County High Intensity Drug

_____

[1] 18 Pa.C.S. §§ 5105(a)(3), 4910(1).

Trafficking Area Task Force's investigation of a multi-state drug trafficking organization, of which they believed Son was a part. During the investigation, officers observed Son making multiple hand-to-hand transactions and engaging in seven controlled sales of "suspected Fentanyl compressed pills" to confidential informants. Trial Ct. Op., 2/21/24, at 5. Officers believed Appellant stored his supply in the house he shared with Appellant because he was able to fill the confidential informants' requests within 30 minutes, without leaving the house. *Id.* at 7-8.

On July 9, 2021, police officers arrested Son for selling suspected Fentanyl pills immediately following a controlled buy. After his arrest, officers secured the house in which he lived with Appellant, while waiting for a search warrant for the house. Appellant arrived at the home after Son's arrest but prior to the issuance of the warrant.

While Appellant was still outside the house, she spoke with Detective Oscar Rosado and Detective Sergeant Jeremy Rubincan, who told her that Son had been arrested for selling controlled substances. Detective Sergeant Rubincan informed Appellant that Son was "working for some dangerous individuals[,]" that the investigation of Son was part of a larger investigation into an "organization" supplying pills that had caused overdose deaths in Chester County, and that the officers "were attempting to take down this organization and stop the overdoses." N.T., 6/1/23, at 174, 194. The detective stated that this conversation occurred prior to the issuance of the search warrant. *Id.*

After instructing her not to tamper with evidence, the officers allowed Appellant to enter the house to put away groceries, take care of her pets, and obtain her computer so that she could work on the back porch in view of the officers. Officers eventually permitted her to work inside the house, where officers could see her through a window. Officers subsequently determined that at some point Appellant had entered the house "without the accompaniment of the detective." *Id.* at 177.

After officers obtained the warrant, they searched the house and found "nothing of significance," which surprised the officers in light of Son's drug sales in the weeks prior and on the day in question. Trial Ct. Op. at 9. Officers had hoped to recover Son's pills to determine Son's relationship with the larger drug trafficking organization based upon the quantity, branding, and packaging of the pills. Following the initial search, the officers left the house.

Soon after, Detective Sergeant Rubincan spoke with Son, and then directed Detective Jonathan Shave and Detective Rosario to return to the house for a second search, because he "had a feeling that there was something that [they] missed. N.T., 6/1/23, at 180-81. The second search also revealed nothing.

Following the second search, Detective Rosado asked Appellant "if she had discarded any evidence." *Id.* at 103. Appellant admitted that she had flushed the pills down the toilet. *Id.* at 103-06

Later in the day, Appellant repeated the same information to Detective Shave during a recorded and subsequently transcribed interview. *Id.* at 142-

- 3 -

143; Interview of Appellant, 7/9/21, at 4. During the interview, Appellant presented a small black plastic container to Detective Shave along with a plastic "bag corner" with residue. Interview of Appellant at 4-5. She explained that the pills had been inside the bag which was inside the black container. Subsequent testing detected Fentanyl on the plastic bag and the container. Appellant stated that she found the container on Son's bedside table and that she flushed the pills down the toilet about "20 minutes" before the detectives arrived to conduct the search. *Id.* at 4, 6.

During the recorded interview with Detective Shave, Detective Sergeant Rubincan called Appellant, a call which was also recorded and transcribed. The detective sergeant explained to Appellant that they needed to determine how many pills she had flushed because Son "still owe[d] someone for that" and Son didn't "know exactly what was there" *Id.* at 2-3. After Appellant estimated that she had thrown out approximately 20 pills, the detective sergeant stated that Son "thought there was around 40." *Id.* at 3.[2]

Approximately a week later, Detective Sergeant Rubincan spoke to Appellant again, when she admitted that "she knew what she was doing when she flushed the pills[,] and she was willing to answer for that." N.T., 6/1/23, at 183.

On March 15, 2022, the Commonwealth charged Appellant with Hindering Prosecution and Tampering with Evidence. Relevant to the grading

---

[2] Before this Court, Appellant raises challenges addressing this specific portion of the interview, which we will reference as the "pill-quantity discussion."

of the Hindering Prosecution charge, the Commonwealth charged Son with Possession with Intent to Deliver, an ungraded felony, Dealing in Proceeds of Unlawful Activities, a first-degree felony, and subsequently with participating in a Corrupt Organization, which is also a first-degree felony.[3] "If [detectives] had located pills in the search of the house on July 9, 2021, additional charges of possession with intent to deliver and dealing in unlawful proceeds may have been charged." Trial Ct. Op. at 9-10.

On October 26, 2022, Appellant filed a motion *in limine* seeking, *inter alia*, to exclude "all information acquired by police investigators" from Son as violative of the rule against hearsay. Appellant's Motion *in Limine*, 10/26/22, at 4 (unpaginated). Appellant did not specifically reference the pill-quantity discussion in the recorded interview. The trial granted Appellant's motion in part, prohibiting introduction of "out-of-court statements [Son] made to police officers" but permitting testimony "about the actions they took based on what they learned from [Son]." Order, 12/8/22.

The Commonwealth filed a motion *in limine* seeking to introduce at trial Appellant's statements admitting to flushing the pills, including the recorded interview, as statements of a party opponent. The Commonwealth also asserted that Appellant's statements were permissible under the *corpus delicti* rule. Appellant opposed the admission of the inculpatory statements based, *inter alia*, on the *corpus delicti* rule. Appellant argued that the Commonwealth

---

[3] 35 Pa.C.S. § 780-113(a)(30); 18 Pa.C.S. §§ 5111(a)(1), 911(b)(3), respectively.

could not demonstrate *corpus delicti* by relying on hearsay that the detectives received from Son. Appellant's Brief in Opp., 11/22/22. On December 8, 2022, following two hearings, the court granted the Commonwealth's motion to admit Appellant's statements.

At trial, the detectives testified to the facts set forth above. During their testimony, the court permitted officers to testify regarding Appellant's conversations with the detectives in which she admitted to destroying the pills and allowed the jury to hear the recorded interview, over counsel's objection. Notably, counsel objected "for the grounds previously stated as to the interview . . . and the recording of the interview[,]" without specifying the nature of the objection. N.T., 6/1/23, at 145.

On June 5, 2023, the jury found Appellant guilty of Hindering Prosecution and Tampering with Physical Evidence, and specifically indicated on the Verdict Slip, in relation to the Hindering Prosecution charge, that Son participated in the crime of "a corrupt organization" and was involved in the crime of "delivery of a controlled substance and/or possessing a controlled substance with intent to deliver." Verdict Slip, 6/5/23.

On August 31, 2023, the court sentenced Appellant to three years of probation and 64 hours of community service on the charge of Hindering Prosecution and a concurrent sentence of two years of probation for Tampering with Evidence. On September 7, 2023, Appellant filed post-sentence motions, which the trial court denied on November 13, 2023.

On December 1, 2023, Appellant filed a Notice of Appeal, after which the trial court and Appellant complied with Rule 1925.

Appellant raises the following questions on appeal:

1. Did the trial court err in denying [Appellant's] motions for judgment of acquittal on the charged felony violation of [Hindering Prosecution] (18 Pa.C.S. § 5105), where the evidence was insufficient to establish, beyond a reasonable doubt, that, at a relevant time before acting, defendant knew that [Son] was liable to be charged with conduct that would constitute a felony of the first or second degree?

2. Did the trial court err in ruling, by pretrial Order based on proffers including inadmissible testimonial hearsay, that [Appellant's] statement to police officers would be admitted at trial as an admission of a party opponent in violation of the *corpus delicti* rule?

3. Did the trial court err in admitting [Appellant's] statements at trial, in violation of the *corpus delicti* rule, because the evidence properly admitted at trial was insufficient to establish a *prima facie* case that [Appellant] had committed a crime without consideration of her statements?

4. Did the trial court err and abuse its discretion in admitting and relying on testimonial and nonverbal hearsay to establish that police officers had learned that drugs should have been found in the initial search of [Appellant's] home?

Appellant's Br. at 3-4 (some capitalization removed).

**Sufficiency of the Evidence**

Appellant's first claim challenges the sufficiency of the evidence for her conviction of Hindering Prosecution, graded as a felony. "A claim challenging the sufficiency of the evidence is a question of law." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence

admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citations omitted). "[T]he trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence" and may rely entirely on circumstantial evidence. ***Id.*** A reviewing court "may not weigh the evidence and substitute its judgment for the fact-finder." ***Id.***

In relevant part, Hindering Prosecution occurs when a person "with intent to hinder the apprehension, prosecution, conviction or punishment of another for [a] crime . . . , conceals or destroys evidence of the crime[.]" 18 Pa.C.S. § 5105(a)(3). "The gradation of the aider's offense is keyed to [her] knowledge of how the aided individual has been, or is liable to be, charged." ***Commonwealth v. Lore***, 487 A.2d 841, 854 (Pa. Super. 1984). Hindering Prosecution constitutes a third-degree felony only if the actor knows that the person she seeks to aid "has been charged or is liable to be charged" with conduct that "would constitute a felony of the first or second degree[.]" 18 Pa.C.S. § 5105(b). In all other cases, the offense should be graded as a misdemeanor of the second degree. ***Id.*** The focus is not on the crime eventually charged against the aided person but rather on the charges that the aider knew to be "liable to be charged at the time the [aider] was acting in violation of [S]ection 5105." ***Lore***, 487 A.2d at 854 (internal quotation marks omitted).

- 8 -

Appellant limits her challenge to the sufficiency of the evidence to the grading of the conviction of Hindering Prosecution as a felony. Appellant's Br. at 14-17. She asserts that the Commonwealth did not demonstrate beyond a reasonable doubt that she knew that Son's conduct made him liable to be charged with first- or second-degree felonies, such as Corrupt Organizations, rather than merely ungraded felonies for drug deliveries, at the time she destroyed the pills. *Id.*

After careful review of the record, we agree with the trial court that the evidence, when viewed in a light most favorable to the Commonwealth as verdict winner, was sufficient "to show that [Appellant] knew that the conduct [Son] was committing and would likely be charged with would constitute a felony of the first or second degree." Trial Ct. Op. at 43. The trial court recounted that Detective Sergeant Rubincan explained to Appellant that their investigation of Son was "important because it was part of a larger ongoing investigation into dangerous people in a corrupt organization that were supplying pills that resulted in a number of overdose deaths in Chester County." Trial Ct. Op. at 43-44. The detectives relayed this information to Appellant before Appellant entered the house, and thus before she destroyed the evidence. From this testimony, the jury could conclude that Appellant "knew that [Son] was under investigation for participating in a corrupt organization of drug trafficking, and he would likely be charged with those crimes, which would constitute a felony of the first or second degree." *Id.* at

44. Accordingly, the Commonwealth presented sufficient evidence regarding the grading of the Hindering Prosecution offense as a third-degree felony.

### Corpus Delicti

In her second and third issues, Appellant challenges the trial court's *corpus delicti* determinations relating to her admissions to destroying the pills. We review challenges to the trial court's *corpus delicti* determinations for abuse of discretion. **Commonwealth v. Murray**, 174 A.3d 1147, 1154 (Pa. Super. 2017). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will, or partiality, as shown by the evidence or the record." **Commonwealth v. Bullock**, 170 A.3d 1109, 1117 (Pa. Super. 2017) (citation omitted).

*Corpus delicti*, or the "body of the crime," requires the Commonwealth "to establish that a crime has actually occurred before a confession or admission of the accused connecting [her] to the crime can be admitted." **Murray**, 174 A.3d at 1154 (citation omitted). "This rule is rooted in the hesitancy to convict a person of a crime solely on the basis of that person's statements." **Bullock**, 170 A.3d at 1117 (citation omitted). Application of the *corpus delicti* rule occurs in two phases:

> (1) In the first phase, the court determines whether the Commonwealth has proven the *corpus delicti* of the crimes charged by a preponderance of the evidence. If so, the confession or extrajudicial statement of the defendant is admissible;
>
> (2) In the second phase, the rule requires that the Commonwealth prove the *corpus delicti* to the factfinder's satisfaction beyond a

reasonable doubt before the factfinder is permitted to consider the confession or extrajudicial statement in assessing the defendant's innocence or guilt.

*Id.* (citations and internal quotation marks omitted).

As applied to the instant case, Appellant's second and third issues address the first phase, regarding the court's decision to permit the jury to consider Appellant's confession. Appellant's Br. at 18-26. Appellant initially challenges the trial court's decision to address the *corpus delicti* issue pretrial via a motion *in limine*. *Id.* at 18-24. Appellant contends that in Pennsylvania "[t]he *corpus delicti* rule is an evidentiary sufficiency rule applied at trial and not an evidentiary rule that can be decided as a 'preliminary question' prior to trial." *Id.* at 18. In conjunction with this argument, Appellant faults the Commonwealth, in its *motion in limine*, for relying on Son's inadmissible hearsay statements regarding the location of the pills as evidence of *corpus delicti*, rather than relying solely on evidence admissible at trial. *Id.* at 19-20. Finally, in her third issue, Appellant contends that the trial court erred in determining that the properly admitted evidence established the *corpus delicti* of the crimes by a preponderance of the evidence sufficient to allow the jury to consider Appellant's inculpatory statements. *Id.* at 24-26.

In response to Appellant's argument, the trial court acknowledged that the order granting the motion *in limine* should have expressly stated that the Commonwealth would have to establish *corpus delicti* at trial for Appellant's inculpatory statements to be admissible, nevertheless the court explained that that is what "happened at trial[:] "The Commonwealth circumstantially

established that a crime occurred prior to [Appellant's] statement being considered by the jury." Trial Ct. Op. at 48. Moreover, the court emphasized that the jury was properly instructed regarding the required proof of *corpus delicti* as "[b]oth counsel addressed the *corpus delicti* rule in their closing arguments and [the trial court] instructed the jury that they could not consider [Appellant's] statement until after they determined that a crime was committed." Trial Ct. Op. at 48; N.T., 6/5/23, at 19-20, 39-40, 49-51.

After review of the record, we conclude that the trial court did not abuse its discretion in determining that the Commonwealth met its *corpus delicti* burden by a preponderance of the evidence, such that it could present Appellant's inculpatory statements to the jury. Specifically, the Commonwealth proffered evidence that Son engaged in drug trafficking, that he kept the pills in the house, that the pills were not found in the house during the lawful search, and that Appellant handed the empty container and the plastic bag with Fentanyl residue to a detective following the search. As the Commonwealth states, "[a] reasonable person would not expect these drugs to magically vanish but rather could be sufficiently convinced beyond a reasonable doubt that a crime was committed to cause the drugs to be taken or destroyed." Commonwealth's Br. at 16. We agree and further emphasize that the proof was based solely on the officer's observations without reference to Son's statements to detectives. Thus, we conclude that the trial court did not err in finding that the Commonwealth provided ample evidence that

Appellant disposed of the pills to satisfy the *corpus delicti* rule and permit the jury to consider Appellant's inculpatory statements at trial.

**Hearsay**

In her final issue, Appellant claims that the court improperly allowed the admission of hearsay. We review a trial court's evidentiary rulings, including rulings relating to hearsay, for an abuse of discretion. *See Commonwealth v. Walter*, 93 A.3d 442, 449 (Pa. 2014). "Hearsay is an out-of-court statement offered for the truth of the matter asserted. Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa. Super. 2020) (citation omitted).

Appellant challenges "statements and assertive questions from investigators containing and assuming the truth of facts relayed to them by [Son,]" who did not testify at trial, as violative of the rule against hearsay. Appellant's Br. at 27. For example, Appellant challenges detectives' testimony that they had "occasion to learn that there might have been drugs in that house" on the day of the search. *Id.* at 28 (citation omitted). She also challenges Detective Sergeant Rubincan's statement during his recorded pill-quantity discussion with Appellant that Son thought that approximately 40 pills were in the container. *Id.* Appellant seeks a new trial, which would bar the testimonial hearsay statements of Son.

We reject Appellant's claim. Instead, we agree with the trial court, which determined, after summarizing the testimony in detail, that the

detectives testified without referencing Son's statements in all but "two brief" instances. Trial Ct. Op. at 51. Addressing the first reference, the court noted that Detective Rosado testified that he "told [Appellant] that [Son] ha[d] provided information." *Id.* at 52 (quoting N.T., 6/1/23, at 103). The court, however, emphasized that it sustained counsel's objection to this statement, which also did not reveal what information Son provided. *Id.* We agree that no error occurred related to this instance.

The court next addressed the pill-quantity discussion between Detective Sergeant Rubincan and Appellant during which the detective told Appellant that Son thought there were approximately 40 pills left. *Id.* at 53. The court observed that "[d]efense counsel objected to the admission of the interview based on the *corpus delicti* rule but did not object to the reference to [Son's] statements" as hearsay *Id.* The court emphasized that if Appellant had raised a hearsay objection, then the court could have redacted those statements. *Id.*

Upon review of the record, we agree and reject Appellant's claim that she preserved the objection through her motion *in limine*, which did not specifically mention the pill-quantity portion of the recorded interview. Appellant's Br. at 28 n.4. While a motion *in limine* "is sufficient to preserve [an] issue for appeal, without renewal of the objection" at trial, the litigant must first have "stat[ed] the specific ground of objection." **Trach v. Fellin**, 817 A.2d 1102, 1108 n.3. (Pa. Super. 2003). In the instant case, Appellant fails to direct this Court to any place in the record where she specifically

objected to the pill-quantity discussion based on hearsay. Thus, we agree with the trial court that Appellant waived her objection to the admission of that portion of the interview.

Accordingly, as we reject all of Appellant's claims, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/13/2024