J. S08004/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| SCOTT DALTON FISHER, | : | No. 1768 WDA 2012 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, October 12, 2012,
in the Court of Common Pleas of Cameron County
Criminal Division at No. CP-12-CR-0000008-2009

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| SCOTT DALTON FISHER, | : | No. 1769 WDA 2012 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, October 12, 2012,
in the Court of Common Pleas of Cameron County
Criminal Division at No. CP-12-CR-0000053-2009

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| SCOTT DALTON FISHER, | : | No. 1770 WDA 2012 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, October 12, 2012,
in the Court of Common Pleas of Cameron County
Criminal Division at No. CP-12-CR-0000064-2009

J. S08004/14

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
SCOTT DALTON FISHER, : No. 1771 WDA 2012
:
Appellant :


Appeal from the Judgment of Sentence, October 12, 2012,
in the Court of Common Pleas of Cameron County
Criminal Division at No. CP-12-CR-0000065-2009


COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
SCOTT DALTON FISHER, : No. 1772 WDA 2012
:
Appellant :


Appeal from the Sentencing, October 12, 2012,
in the Court of Common Pleas of Cameron County
Criminal Division at No. CP-12-CR-0000072-2009


COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
SCOTT DALTON FISHER, : No. 1773 WDA 2012
:
Appellant :


Appeal from the Judgment of Sentence, October 12, 2012,
in the Court of Common Pleas of Cameron County
Criminal Division at No. CP-12-CR-0000073-2009


- 2 -

J. S08004/14

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :         PENNSYLVANIA
                        v.      :
                                :
SCOTT DALTON FISHER,            :         No. 1774 WDA 2012
                                :
            Appellant           :


Appeal from the Judgment of Sentence, October 12, 2012,
in the Court of Common Pleas of Cameron County
Criminal Division at No. CP-12-CR-0000013-2010


COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :         PENNSYLVANIA
                        v.      :
                                :
SCOTT DALTON FISHER,            :         No. 1775 WDA 2012
                                :
            Appellant           :


Appeal from the Judgment of Sentence, October 12, 2012,
in the Court of Common Pleas of Cameron County
Criminal Division at No. CP-12-CR-0000033-2010


BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE AND PLATT,[*] JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:    **FILED SEPTEMBER 08, 2014**

    Appellant appeals from the judgment of sentence imposed in the

above-captioned consolidated cases.  Finding no error below, we affirm.

    Appellant was charged in connection with dozens of camp/cabin

burglaries which occurred between November of 2007 and August of 2008 in

_____

[*] Retired Senior Judge assigned to the Superior Court.

- 3 -

the counties of Cameron, Clinton, Tioga, Potter, Clearfield, and Elk. All of the cases were eventually consolidated and tried in Cameron County. Appellant was arrested in Cameron County on August 18, 2007, following a high-speed chase of his vehicle. Burglary tools and stolen property were found in the vehicle after a consent search.

An omnibus pre-trial motion, which included a motion to suppress evidence, was filed on October 19, 2009, and was eventually denied on June 21, 2011. A jury trial was commenced on August 22, 2011, but on August 23, 2011, a mistrial was declared after a witness testified that appellant had previously been in jail in Wellsboro. On August 26, 2011, appellant filed a motion to bar re-trial on grounds of double jeopardy. On September 15, 2011, appellant filed a motion for change of venue/venire. On November 22, 2011, the court denied the motion to bar re-trial. On December 28, 2011, the trial court denied the motion for change of venue/venire.

On March 15, 2012, appellant filed a motion for dismissal or release for nominal bail pursuant to Pa.R.Crim.P., Rule 600, 42 Pa.C.S.A. The motion was denied on March 26, 2012. Thereafter, appellant waived his right to a jury trial and proceeded to a bench trial. On July 18, 2012, the trial court found appellant guilty of 76 counts of conspiracy to commit burglary. On October 12, 2012, appellant was sentenced to an aggregate term of 17¾ to 35½ years' imprisonment. This timely appeal followed.

Appellant raises the following issues on appeal:

1. The lower Court erred in denying Defendant's Omnibus Pretrial Motion.

    a. Trial counsel was ineffective for failing to raise in the lower court the issue that the consent to search the trunk of Defendant's vehicle was not valid as the Defendant was in custody at the time that State Troopers requested consent to search the trunk.

    b. Trial counsel was ineffective for not raising the issue that the search was not valid because there was no evidence presented that the Defendant was given his Miranda warnings before the police asked for a consent to search the vehicle.

    c. The lower court erred in ruling that the traffic stop was valid.

2. The lower Court erred in denying Defendant's Motion to Bar Retrial Based on Double Jeopardy.

3. The lower Court erred in denying Defendant's Motion for Change of Venue or Venire.

4. The lower Court erred in denying Defendant's Motion for Release on Nominal Bail.

5. Defendant's trial counsel was ineffective for failing to call any witnesses on Defendant's behalf after Defendant requested that trial counsel call witnesses.

6. Defendant's rights were violated when he asked for an attorney at the Pennsylvania State Police Barracks in Emporium, and the State Police denied him an attorney and

> attempted to question Defendant after he requested an attorney. Defendant's counsel was ineffective for failing to raise this issue in the lower court.
>
> 7. The lower court erred in denying Defendant a new attorney when he requested that he get new counsel prior to his first trial commencing.
>
> 8. Defendant's counsel was ineffective for allowing multiple continuances of Defendant's case without Defendant's consent.
>
> 9. Defendant's counsel was ineffective for agreeing to a non-jury trial for Defendant's second trial when Defendant did not consent to the same.
>
> 10. Defendant's counsel was ineffective in his questioning of the co-Defendant who testified against Defendant for failing to raise inconsistencies between the co-Defendant's preliminary hearing testimony and his trial testimony.
>
> 11. The lower court erred in allowing hearsay testimony to be admitted during Defendant's trial over Defendant's objection.
>
> 12. The lower court erred in finding Defendant guilty of the crimes for which he was sentenced as there was insufficient evidence presented as to each of the crimes for which Defendant was convicted.

Appellant's brief at 7-8.

We first note that we cannot or need not address a number of these issues. Issues 1a, 1b, 5, 8, 9, and 10 directly raise ineffective assistance of counsel claims. Generally, such issues cannot be reviewed on direct appeal but must await collateral review. ***Commonwealth v. Grant***, 813 A.2d 726,

738 (Pa. 2002). Issue 6 concedes that it was not raised before the trial court. An issue cannot be raised for the first time on appeal and is deemed waived. Pa.R.A.P., Rule 302(a), 42 Pa.C.S.A. To the extent that Issue 6 is also cast as trial counsel's ineffectiveness, it is likewise barred by **Grant**. Finally, in the body of the brief, appellant withdraws Issues 2 and 11 from consideration. (Appellant's brief at 19 and 35.) Consequently, we will review only Issues 1c, 3, 4, 7, and 12, and we will address them in the order presented.

In Issue 1c, appellant argues that the trial court erred in failing to suppress evidence found in appellant's car because his consent to search was invalid because appellant was in custody at the time and because he had not been apprised of his **Miranda** warnings.[2] These concerns are irrelevant because we find that at the time the police requested permission to search the vehicle, they already had probable cause to perform a warrantless vehicular search.

Our supreme court has recently held that probable cause alone is sufficient to justify a warrantless search of an automobile:

> In sum, our review reveals no compelling reason to interpret Article I, Section 8 of the Pennsylvania Constitution as providing greater protection with regard to warrantless searches of motor vehicles than does the Fourth Amendment. Therefore, we hold that, in this Commonwealth, the law governing warrantless searches of motor vehicles is coextensive with federal law under the

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

Fourth Amendment. The prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required. The consistent and firm requirement for probable cause is a strong and sufficient safeguard against illegal searches of motor vehicles, whose inherent mobility and the endless factual circumstances that such mobility engenders constitute a *per se* exigency allowing police officers to make the determination of probable cause in the first instance in the field.

Here, there is no dispute that probable cause existed to search Appellee's motor vehicle. Nothing more is required.

*Commonwealth v. Gary*, 91 A.3d 102, 138 (Pa. 2014).

We begin with the definition of probable cause: "The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Rogers*, 578 Pa. 127, 849 A.2d 1185, 1192 (2004). We evaluate probable cause by considering all relevant facts under a totality of circumstances analysis. [*Commonwealth v.*] *Luv*, 735 A.2d [87 (Pa. 1999)] at 90 (citing *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985)).

*Commonwealth v. Hernandez*, 935 A.2d 1275, 1284 (Pa. 2007).

At the time of the stop, the camp/cabin burglaries had been happening for months, and the State Troopers were on duty late at night following every vehicle they came across. (Suppression hearing notes of testimony, 2/16/10 at 5-6.) The State Police had developed a particular profile of the burglaries. (*Id.* at 6.) According to this profile, it was believed that multiple individuals were involved and that some participants were being discharged

from a vehicle remotely from the camp/cabin and that the discharged individuals were communicating with the driver by radio. (*Id.* at 29-30.) This was based on the fact that no tire tracks were ever found at or leading up to the camps/cabins. (*Id.*)

In the early morning hours of April 18, 2007, Troopers Michael W. Smith and Allen L. Brothers were travelling southbound in an unmarked police cruiser when appellant's car passed them in a northbound direction. (*Id.* at 6-7.) As Trooper Smith initiated a three-point turn to begin pursuit, he heard appellant's vehicle immediately begin to accelerate. (*Id.* at 7.) Trooper Smith stated that they were travelling at speeds well over 85 miles per hour and still were not closing on appellant's car. (*Id.* at 8.) Eventually, appellant slowed enough for the police to catch up, but even then he was travelling at 62 to 65 miles per hour on a roadway with a 55 miles per hour speed limit. (*Id.* at 9.) Appellant again slowed his vehicle, this time to 50 miles per hour, but now Trooper Smith witnessed appellant's vehicle twice cross the yellow line dividing the lanes of traffic. (*Id.*) At this point, the troopers illuminated a red bubble light and effected a traffic stop. (*Id.* at 10, 25.)

As the troopers approached appellant's vehicle, they found him at the wheel dressed in sweatpants and a sweater jacket. (*Id.* at 10-11.) Edward Whitten was riding in the passenger seat beside appellant, and appellant's son Travis Fisher was in the backseat. (*Id.*) Whitten and Travis

were in full camouflage outfits. (*Id.*) Whitten's outfit had a two-way radio attached to it, and a two-way radio was on the seat beside Travis. (*Id.* at 11.) Additionally, there were flashlights and various gloves strewn throughout the vehicle. (*Id.*) In the backseat was a black canvas bag in which the troopers could see a Nintendo game system, a thick coil of white, insulated wire, and several DVDs. (*Id.* at 11-12.) These items matched the type of items stolen in the prior burglaries. (*Id.* at 12.) Finally, the deck lid behind the rear passenger seat had two holes cut into it where there had been audio speakers. (*Id.* at 15.) When he directed his flashlight into these holes, Trooper Smith could see into the trunk of appellant's car. (*Id.* at 15-16.) In the trunk, Trooper Smith saw a red toolbox, extension cords, a black DVD player, a red gas can, a box of kitchen knives, as well as various other merchandise. (*Id.* at 16.)

When asked why they were wearing camouflage outfits, the passengers responded that it was because they were playing paintball. (*Id.* at 13.) When asked why there was no paint on their outfits, they responded that they had changed clothing at one Richard Eaton's house. (*Id.*) When asked where the paintball guns, masks, and equipment were, they stated that they were also at Eaton's house. (*Id.*) Police obtained Eaton's telephone number from the group and contacted him. (*Id.* at 13-14.) Eaton's girlfriend, Carol Dunlap, responded. (*Id.* at 14.) She stated that she knew appellant and Travis, but that they had not been at their residence

that evening and that Eaton had been asleep for several hours. (*Id.*) It was at this point that Trooper Smith asked appellant for permission to look in the trunk. (*Id.* at 15.)

Simply stated, the State Troopers did not need permission to look in the trunk because they had probable cause to perform a vehicular search, having already witnessed overwhelming evidence that appellant and his crew were in fact the wanted burglars. From the initial high speed chase, to the passenger compartment strewn with burglary tools and contraband, to the poorly explained camouflage outfits, to the two-way radios, and finally to the outright lie involving Eaton, the police had a tremendous number of indicators that appellant had been committing burglaries. Because the police had probable cause to search the vehicle's trunk, we find no error in the trial court's denial of suppression.

In Issue 3, appellant complains that the trial court erred in denying his motion for change of venue/venire. Appellant argues that excessive pre-trial publicity called for a change of venue or venire. The standard of review for a denial of a motion for change of venue is whether the trial court abused its discretion. ***Commonwealth v. Johnson***, 612 A.2d 1382, 1384-1385 (Pa.Super. 1992). First, we find that this issue was made moot by appellant's decision to proceed by bench trial; there was no jury to be prejudiced by pre-trial publicity. Appellant does not argue that he was improperly forced to submit to a bench trial by the denial of this motion.

Second, even if not moot, we find no abuse of discretion in the trial court's analysis. Appellant submitted five newspaper articles to the court below: four articles from the Cameron County Echo published July 27, 2011, August 10, 2011, August 24, 2011, and August 31, 2011; and one article from the Bradford Era published September 2, 2011. (Trial court opinion, 12/28/11 at 1-2.)[3] The court examined each article and found no pervasive or inflammatory information. (*Id.* at 2.) The July 27, 2011 article was on a back page and gave only general information about appellant and other criminal defendants. (*Id.*) The August 10, 2011 article was on the front page but featured another, unrelated criminal defendant, Jason Kamats. (*Id.*) The passing reference to appellant came at the end of the article noting that he was facing charges in a crime spree involving over 100 offenses. (*Id.*) The August 24, 2011 article was front page, but contained a balanced account of the first day of appellant's first trial and did not present any conjecture that would taint a subsequent jury pool. (*Id.* at 3.) The final two articles, August 31, 2011, and September 2, 2011, both presented unbiased accounts of the mistrial that was declared. (*Id.*) We find that the trial court did not abuse its discretion in denying the motion for change of venue/venire.

In Issue 4, appellant argues that the court erred in denying his motion for dismissal or release on nominal bail pursuant to Rule 600. Again, our

---

[3] The pages of the opinion are not enumerated; this is by our count.

- 12 -

standard of review is abuse of discretion. ***Commonwealth v. Thompson***, 93 A.3d 478, 486 (Pa.Super. 2014).

We first note that outright dismissal of charges pursuant to Rule 600 was never at issue below. Rule 600 provides the following remedies:

> (D)   Remedies
>
> > (1)   When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.
>
> > (2)   Except in cases in which the defendant is not entitled to release on bail as provided by law, when a defendant is held in pretrial incarceration beyond the time set forth in paragraph (B), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the defendant be released immediately on nominal bail subject to any nonmonetary conditions of bail imposed by the court as permitted by law. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P., Rule 600(D), 42 Pa.C.S.A.

Dismissal under Rule 600(D)(1) was not available because the time for bringing appellant to trial under Rule 600(A) had not yet elapsed:

> (A)  Commencement of Trial; Time for Trial
>
> > (2)  Trial shall commence within the following time periods.
> >
> > > (d)  When a trial court has granted a new trial and no appeal has been perfected, the new trial shall commence within 365 days from the date on which the trial court's order is filed.

Pa.R.Crim.P., Rule 600 (A)(2)(d), 42 Pa.C.S.A.

The trial court granted appellant a new trial on August 23, 2011, when it declared a mistrial in appellant's first trial. Therefore, pursuant to Rule 600(A)(2)(d), the Commonwealth had until August 23, 2012, to bring appellant to trial. Appellant filed his motion for dismissal or release for nominal bail on March 15, 2012, well within that time period and no dismissal of charges was therefore available under Rule 600(D)(1). However, release for nominal bail under Rule 600(D)(2) was at issue because appellant was facially beyond the maximum time for pre-trial incarceration under Rule 600:

> (B)  Pretrial Incarceration
>
> > Except in cases in which the defendant is not entitled to release on bail as provided by law, no defendant shall be held in pretrial incarceration in excess of

>           (4)    120 days from the date on which
>                  the order of the trial court is filed
>                  granting a new trial when no
>                  appeal has been perfected;

Pa.R.Crim.P., Rule 600(B)(4), 42 Pa.C.S.A.

As noted by the trial court, the mechanical 120-day run date from August 23, 2011 was December 21, 2011. (Order, 3/26/12 at 2).[4] However, following the grant of the mistrial, appellant filed two motions. On August 26, 2011, appellant filed his motion to bar re-trial on grounds of double jeopardy, which was denied November 22, 2011, and on September 15, 2011, appellant filed a motion for change of venue/venire, which was denied December 28, 2011. The time between the filing and resolution of a defendant's pre-trial motions is excludable from the Rule 600 period only if the motion delayed trial and thus made the defendant unavailable and if the Commonwealth exercised due diligence in opposing or responding to the motion. ***Commonwealth v. Lynn***, 815 A.2d 1053, 1058-1059 (Pa.Super. 2003).

Instantly, both of appellant's motions delayed trial. Since the hearing on both matters transpired only five days after the filing of the second motion, on September 20, 2011, there is no issue as to the Commonwealth failing to exercise due diligence; consequently, the time period between the filing of appellant's pre-trial motions and their resolution is excludable.

---

[4] The pages of the order are not enumerated; this is by our count.

Thus, as correctly calculated by the trial court, the period between August 26, 2011 and December 28, 2011, a period of 124 days, is excludable from the Rule 600 calculation. (Order, 3/26/12 at 3.) The trial court also properly excluded the eight days between the time appellant filed the motion for dismissal or release for nominal bail on March 15, 2012, and the March 23, 2012 date of its order disposing of the motion. (**Id.**) Thus, the trial court properly excluded 132 days from the Rule 600 time period, arriving correctly at an adjusted run date of May 1, 2012. (**Id.**) Therefore, at the time appellant filed his motion for dismissal or release for nominal bail, he was not entitled to release for nominal bail. We find no error here.

In Issue 7, appellant asserts that the trial court erred in denying defendant a new attorney when he requested same before his first trial. Unfortunately, counsel for appellant concedes that she is unable to locate anywhere in the record where such a request was made. (Appellant's brief at 30.) An appellant must identify where in the record an issue was preserved or it is waived. **See** Pa.R.A.P., Rules 2117(c) and 2119(e), 42 Pa.C.S.A.; **Commonwealth v. Maisonet**, 31 A.3d 689, 694 (Pa. 2011), **cert. denied**, **Maisonet v. Pennsylvania**, 133 S.Ct. 117 (2012). Also, as previously noted, issues may not be raised for the first time on appeal. Pa.R.A.P., Rule 302(a), 42 Pa.C.S.A. Consequently, we find that appellant has waived this issue.

Finally, in Issue 12, appellant contends that the evidence was insufficient to convict him of 76 separate conspiracies to commit burglary. We observe our standard of review:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

***Commonwealth v. Kearney***, 92 A.3d 51, 64 (Pa.Super. 2014), quoting

***Commonwealth v. Slocum***, 86 A.3d 272, 275-276 (Pa.Super. 2014)

(citations omitted).

Appellant's sufficiency argument has two bases.  First, he argues that the evidence proved the existence of only one larger, overarching conspiracy rather than 76 individual conspiracies.  Second, appellant claims that the Commonwealth presented the testimony of only 29 burglary victims and that the testimony of Whitten failed to identify each individual camp/cabin that the conspirators burgled; therefore, there was insufficient evidence to tie appellant to a significant number of the burglaries.

Appellant's first argument posits that the evidence established only a single, overarching conspiracy.  We note:

> In determining whether a single conspiracy or multiple conspiracies have been established, we must consider several relevant factors:
>
> > The factors most commonly considered in a totality of the circumstances analysis of the single vs. multiple conspiracies issue . . . are: the number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and, the degree to which interdependence is needed for the overall operation to succeed.

> *Commonwealth v. Davis*, 704 A.2d 650, 654
> (Pa.Super.1997) citing *Commonwealth v. Savage*,
> 388 Pa.Super. 561, 566 A.2d 272, 278 (1989).

*Commonwealth v. Barnes*, 871 A.2d 812, 820 (Pa.Super. 2005),

*affirmed*, 924 A.2d 1202 (Pa. 2007).

Appellant's argument specifically relies upon this court's holding in

*Commonwealth v. Grekis*, 601 A.2d 1275 (Pa.Super. 1992). In *Grekis*,

appellant was the owner of the Quick Stop restaurant in Allegheny County,

which was managed by appellant's brother-in-law. Appellant's brother-in-

law conspired with one Lance Neuring, a burglar and a thief, to supply the

Quick Stop with cigarettes. Between August 16, 1987, and February 19,

1988, Neuring forcibly entered numerous stores in Pittsburgh and stole over

1,600 cartons of cigarettes which he then resold to appellant. Appellant was

subsequently convicted of 19 separate conspiracy convictions. On appeal,

this court reversed:

> More troublesome, however, is appellant's
> assertion that the Commonwealth did not prove
> nineteen conspiracies but a single, continuing
> conspiracy which included, inter alia, nineteen
> deliveries of stolen merchandise. In this matter, we
> conclude that appellant must prevail. Given the
> nature of the evidence here, we agree that it proved
> a single, ongoing and continuous conspiracy rather
> than a distinct criminal agreement each time Neuring
> delivered the cigarettes. Recently, this court has
> explained:
>
>> Under Pennsylvania law, a single
>> conspiracy may have multiple criminal
>> objectives . . . . Thus, when on a single
>> occasion there is a single agreement to

commit two crimes, e.g. murder and arson, a single conspiracy exists . . . . Likewise, a single conspiratorial agreement may involve a continuing course of criminal conduct involving the repetition of a single crime or the commission of a series of crimes.

*Commonwealth v. Savage*, 388 Pa.Super. 561, 571, 566 A.2d 272, 276-277 (1989); *see also Commonwealth v. Troop*, 391 Pa.Super. 613, 621, 571 A.2d 1084, 1088-89 (1990) (where the evidence demonstrated that the co-conspirators formulated a distinct and separate criminal plan and committed a robbery each time their need for money for cocaine arose, evidence warranted a finding of three separate conspiracies).

In light of this standard, we find that the evidence here substantiates only a single conspiracy to accomplish several, repeated crimes. By so concluding we do not fail to appreciate that this conspiracy involved numerous serious offenses. No doubt the "fencing" arrangement with the Quick Stop facilitated and encouraged the many separate burglaries committed by Neuring. Nonetheless, the heart of the offense of conspiracy is the agreement and in our view the evidence at trial reasonably supports the inference of only one. *See Commonwealth v. Perez*, 381 Pa.Super. 149, 553 A.2d 79, *appeal dismissed*, 525 Pa. 132, 577 A.2d 1340 (1989). Thus, we vacate the convictions on all but one count of criminal conspiracy.

*Grekis*, 601 A.2d at 1283-1284.

We find *Grekis* to be distinguishable. Although not directly stated in the facts, it appears that there was an initial, ongoing agreement between appellant's brother-in-law and Neuring to supply the Quick Stop with stolen cigarettes. Thereafter, Neuring simply made deliveries to the Quick Stop

without further discussion. All of the burglaries in **Grekis** shared a common objective: supplying the Quick Stop with cigarettes. Instantly, however, the evidence does not show an ongoing agreement to achieve a common objective. Rather, it appears that appellant and his crew ventured out on a burglary detail whenever the mood or the need struck them.

The Commonwealth cites to **Commonwealth v. Troop**, 571 A.2d 1084 (Pa.Super. 1990), **appeal denied**, 584 A.2d 317 (Pa. 1990), wherein this court found the lack of a common goal or objective critical. In **Troop**, the conspirators committed multiple robberies to supply money for drugs as they needed them. The **Troop** court held:

> A single, continuing conspiracy is demonstrated where the evidence proves that the essential feature of the existing conspiracy was a common plan or scheme to achieve a common, single, comprehensive goal . . . . A single, continuing conspiracy may contemplate a series of offenses, or be comprised of a series of steps in the formation of a larger, general conspiracy . . . . Therefore, where the evidence at trial is sufficient for the jury to infer that the essential features of the existing conspiracy were a common plan or scheme to achieve a common, single, comprehensive goal or end, then the conclusion that the conspiracy was a single, continuing conspiracy is justified.
>
> **United States v. Continental Group, Inc.**, 456 F.Supp. 704, 716 (E.D.Pa.1978), **aff'd**, 603 F.2d 444 (3d Cir.1979), **cert. denied**, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980).

***Commonwealth v. Lore***, 338 Pa.Super. 42, 67-68, 487 A.2d 841, 855 (1984) (citations omitted), ***allocatur denied*** (July 18, 1985).

Here, appellant argues that the trial evidence established that the robberies and other offenses resulted from one ongoing conspiracy, with the single purpose of obtaining money to use to purchase cocaine. We disagree. According to the testimony of one of the accomplices, Bess Brown, the first robbery, on April 11, 1988, occurred after appellant and his four accomplices had taken cocaine, and discussed the need to get money to buy more cocaine. N.T. November 16, 1988 at 55-62. The money taken in the robbery was used to purchase cocaine, which the five shared. ***Id.*** at 63. Some twenty-seven hours later, on April 13, 1988, the five accomplices were together again, and there was a discussion concerning the need to obtain money to purchase more cocaine. ***Id.*** at 66-67. Appellant, along with James Troop and Daniel Verosko, then proceeded to an "AM/PM" store and robbed it. ***Id.*** at 67–70. Once again, the proceeds from the robbery were used to purchase cocaine for the entire group. ***Id.*** at 70–71. The final robbery occurred later that morning. Bess Brown testified that, prior to this robbery, James Troop mentioned the need to obtain more money for cocaine. ***Id.*** at 72–73. Appellant Larry Troop agreed, and four of the five then drove to a convenience store and robbed it. ***Id.*** at 73–77. The proceeds again were used to purchase cocaine. ***Id.*** at 77.

This testimony alone clearly was sufficient to justify a finding that appellant and his accomplices entered into three separate agreements to commit the robberies. The three criminal episodes that formed the basis for appellant's convictions were separated in time and place. In addition, there was no evidence of a single, pre-existing criminal plan that encompassed the three separate robberies. Instead, the evidence suggested that the group formulated a separate criminal plan and committed a

> robbery each time the group needed money to buy more cocaine. As the Commonwealth aptly notes in its brief, "the idea and agreement to commit each robbery was formed only after the available cocaine had been used by the co-defendants. Each time the need for cocaine surfaced and each time the need for money to purchase the cocaine surfaced, the group agreed to commit the robberies . . . ." Brief for Appellee at 32. Accordingly, we hold that the evidence warranted a finding of guilt for three separate conspiracies.

***Troop***, 571 A.2d at 1089-1090.

As in ***Troop***, there is no evidence that all of the burglaries committed by appellant were to further some overarching goal. There is no evidence that these burglaries were anything more than spur of the moment forays. Thus, we conclude that these burglaries constituted multiple conspiracies rather than a single, overarching conspiracy.

Finally, appellant offers a second theory as to the evidence being insufficient. Appellant claims that the Commonwealth presented the testimony of only 29 burglary victims and that the testimony of Whitten failed to identify each individual camp/cabin that the conspirators burgled; therefore, there was insufficient evidence to tie appellant to a significant number of the burglaries. We disagree.

The Commonwealth presented the testimony of 75 different burglary victims each of whom identified their camp/cabin, identified the time period when they discovered the burglary, identified the damage done and/or the items taken, stated that they did not know appellant, and related whether

they had recovered any of their stolen belongings. (**See** notes of testimony, 5/14/12 at 8-169 (59 victims); 5/15/12 at 7-50, 72-76 (16 victims).) Many of the victims claimed items that the police recovered from appellant's residence. (Notes of testimony, 5/15/12 at 90-98 (police seized stolen property from appellant's residence).) Moreover, each owner described damage to their camp/cabin consistent with Whitten's description of how the burglaries were done. Many victims described stolen property consistent with what the police found and which Whitten also described such as flat screen televisions and copper piping. Finally, Whitten testified that the police escorted him to various camps/cabins and asked him if they looked familiar. (**Id.** at 54-55.) In sum, given the nature of these burglaries and their time frame, and the voracious criminal appetite described by Whitten, we think sufficient evidence was presented that appellant committed each of these burglaries. We see no merit here.

Accordingly, having found no merit in the arguments raised on appeal, we will affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2014

- 24 -