J. A21041/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
             v.              :
:
JOSEPH F. MIELUCHOWSKI,        :       No. 945 EDA 2019
:
            Appellant    :

Appeal from the Judgment of Sentence, September 20, 2017,
in the Court of Common Pleas of Montgomery County
Criminal Division at No. CP-46-CR-0004906-2015

BEFORE:  BOWES, J., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED APRIL 03, 2020**

Joseph F. Mieluchowski appeals from the September 20, 2017 judgment of sentence entered by the Court of Common Pleas of Montgomery County following his conviction of 15 counts of robbery (threat of immediate serious bodily injury), five counts of robbery (demand money from financial institution), five counts of possessing instruments of crime, and one count each of kidnapping, conspiracy to commit robbery (threat of immediate serious bodily injury), and conspiracy to commit robbery (demand money from financial institution).[1]  After careful review, we vacate the judgment of sentence and remand for further proceedings consistent with this memorandum.

---

[1] 18 Pa.C.S.A. §§ 3701(a)(ii) and (vi), 907(b), 2901(a)(2), and 903(a), respectively.

The trial court set forth the following factual and procedural history:

Between November 18, 2009, and February 5, 2012, appellant and co-defendant/co-conspirator, Robert Wisler, ("Wisler") conspired to commit, and appellant did commit, five (5) distinct bank heists throughout the counties of Montgomery, Lancaster, and Westmoreland within the Commonwealth of Pennsylvania.[Footnote 2] Throughout his spree of "takeover-style" bank robberies, appellant employed a consistent ***modus operandi***—an outfitted and disguised appellant loudly declared to the numerous bank hostages that he was conducting a bank robbery while brandishing a handgun, intentionally putting them in fear of immediate, serious bodily injury; and approached multiple bank tellers, demanding there be "no dye packs" with the cash that he stashed in a bag which he brought with him.

> [Footnote 2:] The five (5) Pennsylvania robberies throughout 2009 and 2012 were as follows:
>
> 1. PNC Bank, North Huntingdon, Westmoreland County, PA, 11/18/09.
>
> 2. Citizens Bank, 48 Skippack Pike, Ambler, Whitpain Township, Montgomery County, PA, 5/12/10.
>
> 3. Royal Bank, 600 York Road, Jenkintown, Montgomery County, PA, 6/26/10.
>
> 4. Susquehanna Bank, Gap, Lancaster County, PA, 5/27/11.
>
> 5. Citizens Bank, 48 Skippack Pike, Ambler, Whitpain Township, Montgomery County, PA 2/5/12.

In or around April of 2014, during the midst of the Pennsylvania State Police ("PSP") Department's investigation into the Pennsylvania robberies, the Delaware State Police ("DSP") contacted the PSP and exchanged information and evidence, including DNA evidence, collected in their own investigation of seven (7) similar-style robberies in Delaware that occurred during the same time period and within close geographical proximity to those five (5) that occurred in Pennsylvania. Said exchange assisted the PSP in identifying appellant, and charging him on or about June 4, 2015, with numerous criminal counts relating to bank robbery within Pennsylvania, and ultimately served as part of the Commonwealth's evidence at trial proving appellant's identity as the perpetrator of the robberies and his continuing course of conduct during which the robberies took place.

Specifically, the evidence obtained during the DSP's investigation into the seven (7) Delaware bank heists revealed to the Commonwealth appellant's identity, given the consistent **modus operandi** employed by him in carrying out the Delaware and Pennsylvania robberies; most notably, the "takeover-style" of the robberies, whereby appellant went into the banks, "loudly declare[d] there [wa]s a bank robbery, display[ed] a weapon, approache[d] multiple tellers, g[ot] cash from top and bottom drawers, and [. . .] t[ook] over the bank [. . .]"; in other words, "everyone in the bank[s] kn[ew] that a robbery [wa]s occurring, customers and employees." The DSP also collected a mustache disguise from one of the scenes of crime, as well as a ballcap, which the PSP were able to test later and determine that appellant's DNA could not be excluded as the source of the DNA profiles found on this evidence. The exchange of evidence between the two (2) states' police departments further allowed the PSP to map the various cross-state robberies, illustrating the close proximity of the robberies to appellant's Pennsylvania home, as well as, the location of the robberies on main thoroughfares connecting the two (2) states. Moreover, the PSP used evidence of appellant's work

history, in part collected from an anonymous tip to the DSP, to further develop appellant's motive for the robberies, such that appellant's income fell due to lack of work around the same time in 2009 when the robberies began occurring. The PSP also used physical evidence collected by the DSP, *i.e.*, appellant's fake mustache and ballcap, to test and compare with a buccal (cheek) swab sample of appellant's DNA.

The cross-state sharing of information between the police departments assisted the PSP in criminally charging appellant on June 4, 2015, with the various criminal charges relating to the robberies in Pennsylvania.

Trial court opinion, 5/3/19 at 1-3 (extraneous capitalization, footnote 1, and citations to the record omitted; brackets in original).

A jury convicted appellant of the aforementioned crimes on December 7, 2016. On May 5, 2017, the trial court sentenced appellant to an aggregate term of 29-58 years' imprisonment, to be followed by seven years' probation. Appellant filed a post-sentence motion on May 12, 2017, which the trial court denied in part and granted in part on August 15, 2017.[2] The trial court subsequently re-sentenced appellant on September 20, 2017, to an aggregate term of 31-62 years' imprisonment, to be followed by 10 years' probation.

Appellant filed a notice of appeal on October 5, 2017. The trial court ordered appellant to file a concise statement of errors complained of on appeal

---

[2] The trial court vacated appellant's convictions on five counts of robbery-threat of immediate serious bodily injury and two counts of robbery-demand money from financial institution, as the statute of limitations expired. *See* 42 Pa.C.S.A. § 5552(b)(1).

pursuant to Pa.R.A.P. 1925(b), and appellant timely complied. The trial court subsequently filed an opinion pursuant to Pa.R.A.P. 1925(a).

This court dismissed appellant's appeal on June 15, 2018, for failure to file a brief. On January 28, 2019, appellant filed a counseled petition pursuant to the Post Conviction Relief Act,[3] in which he sought reinstatement of his direct appellate rights **nunc pro tunc**. The trial court granted appellant's petition on March 1, 2019. Appellant subsequently filed a timely notice of appeal on March 22, 2019. The trial court did not order appellant to file another concise statement of errors complained of on appeal, nor did it file another Rule 1925(a) opinion.

Appellant raises the following issues on appeal:

> [1.] Did the trial court err by allowing the Commonwealth to present evidence obtained during the investigation of seven bank robberies that [appellant] allegedly committed in the state of Delaware as evidence of his "identity" as the perpetrator of the five Pennsylvania bank robberies for which [appellant] was being tried?
>
> [2.] Is the trial court's sentence, which has two conspiracy charges running consecutively, illegal when those conspiracy charges are predicated on the identical conspiracy?

Appellant's brief at 2.[4]

---

[3] 42 Pa.C.S.A. §§ 9541-9546.

[4] For ease of discussion, we have re-ordered appellant's issues.

In his first issue, appellant contends that the trial court erred when it permitted the Commonwealth to present evidence of seven bank robberies occurring in the State of Delaware. (Appellant's brief at 11.) Specifically, appellant argues that the robberies that occurred in Delaware were not sufficiently similar to the robberies for which appellant was charged in Pennsylvania. (*Id.* at 13.) Appellant further avers that evidence of the Delaware robberies was unfairly prejudicial in that the prejudice outweighed any probative value that the evidence had. (*Id.* at 14.)

When reviewing a trial court's admission of evidence, we are subject to the following standard:

> "The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of discretion." ***Commonwealth v. Reid***, [] 99 A.3d 470, 493 ([Pa.] 2014). An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. ***Commonwealth v. Davido***, [] 106 A.3d 611, 645 ([Pa.] 2014).

***Commonwealth v. Woodard***, 129 A.3d 480, 494 (Pa. 2015), ***cert. denied***, 137 S.Ct. 92 (2016).

> The particular Pennsylvania Rule of Evidence governing the admission of "prior bad acts" is Pa.R.E. 404(b) which provides, in relevant part:
>
> **(b)   Other crimes, wrongs, or acts.**
>
>     . . . .

      (2)    Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

      (3)    Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

Pa.R.E. 404(b)(1)-(3). Under this rule, the admission of prior "bad acts" is inadmissible for the sole purpose of proving the defendant has a bad character, or a "criminal propensity." **Commonwealth v. Powell**, [] 956 A.2d 406, 419 ([Pa.] 2008). Nevertheless, this rule permits the admissibility of such evidence for other relevant purposes such as:

> showing the defendant's motive in committing the crime on trial, the absence of mistake or accident, a common scheme or design, . . . to establish identity [,][or] where the acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development.

**Id.** However, admission for these purposes is allowable only whenever the probative value of the evidence exceeds its potential for prejudice. Pa.R.E. 404(b)(3).

*Commonwealth v. Briggs*, 12 A.3d 291, 336-337 (Pa. 2011), *cert. denied*, 565 U.S. 889 (2011).  Our supreme court further noted that "[w]hen the trial court admits evidence of a defendant's other bad acts, 'the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose.'"  *Commonwealth v. Crispell*, 193 A.3d 919, 937 (Pa. 2018), quoting *Commonwealth v. Solano*, 129 A.3d 1156, 1178 (Pa. 2015).

The Commonwealth avers that the prior bad acts evidence admitted by the trial court establishes appellant's identity.  (Commonwealth's brief at 20-21.)  The record reflects that a fake mustache was recovered from the scene of one of the Delaware bank robberies and was sent off for DNA testing. (Notes of testimony, 12/6/16 at 191-194.)  Detective Grassi testified that, initially, there were no results returned, as a suspect had not yet been identified.  (*Id.* at 193-194.)  As noted by the trial court, the Pennsylvania State Police subsequently tested the DNA sample taken in Delaware and, after comparing the Delaware sample with a buccal sample of appellant's DNA, "ultimately determined [a]ppellant's DNA sample could not be excluded as a source of the DNA profiles" taken in Delaware.  (Trial court opinion, 5/3/19 at 20.)  Further, the trial court noted that, "[t]he limited security footage collected from the various banks [in Pennsylvania and Delaware] consistently showed the assailant was a white, stocky male approximately six (6)-feet tall." (*Id.*, citing notes of testimony, 12/6/16 at 179-203).

Appellant further argues that the prejudice of the prior bad acts evidence admitted by the trial court outweighed its probative value and had the effect of "rous[ing] the jury to overmastering hostility[.]" (Appellant's brief at 14 (citations omitted).) Specifically, appellant contends that "[e]vidence of prior criminal activity . . . is probably only equaled by a confession in its prejudicial impact upon a jury." (*Id.* at 15, quoting ***Commonwealth v. Spruill***, 391 A.2d 1048, 1050 (Pa. 1978).)

Here, the record reflects that the trial court provided the following instruction to the jury before the Commonwealth began its direct examination of Detective Grassi:

> Ladies and gentlemen of the jury, before I have the Commonwealth begin their questioning, I do want to instruct you – I asked you questions about this during voir dire – but that this witness – what I anticipate much of this witness' testimony will be related to robberies that occurred in the State of Delaware.
>
> I wanted to remind you that this evidence is being presented as circumstantial evidence of identification and perhaps evidence of motive. The fact that the defendant was investigated or even arrested for any crimes in Delaware cannot be used against him in this matter for anything other than to show identification in the Pennsylvania cases, if you find that to be relevant after hearing all of the evidence, or for motive. You cannot use the fact that he was arrested or charged with anything in the State of Delaware as evidence of guilt in the cases here in Pennsylvania.

Notes of testimony, 12/6/16 at 155-156.

Later during the trial, the trial court again reminded the jury during the Commonwealth's direct examination of Mr. Wisler that evidence of prior bad acts could not be used as evidence of his guilt in the instant charges:

> Ladies and gentlemen, as there has been a reference to beginning testimony about a Delaware robbery, I will just again remind you that the Delaware robberies are being introduced into evidence as to help with your determination regarding identification and motive. The fact that the defendant has been charged with or was considered for any robberies in Delaware cannot be used against him to find him guilty in the Pennsylvania cases.

*Id.* at 299-300.

Finally, during its charge to the jury, the trial court again reminded the jury of the limits of the prior bad acts evidence:

> As I have instructed you many times during this trial and I will repeat at this time, you heard evidence that [appellant] has been accused of robberies in the State of Delaware in addition to those in this case. The evidence presented regarding those robberies has been provided to you for a limited purpose: That is to show circumstantial evidence of the identification and/or to prove evidence of motive. You may consider this evidence insofar as that it aids your determination of the identification of the person who committed the five Pennsylvania robberies which are before you or for your consideration of motive. The fact that [appellant] was investigated or accused of other bank robberies in the State of Delaware for which the charges are not before you shall not be used in determining [appellant's] guilty in the matters that are before you today.

Notes of testimony, 12/7/16 at 518-519.

It is well settled that juries are presumed to follow the trial court's instructions. *Commonwealth v. Aikens*, 168 A.3d 137, 143 (Pa. 2017), citing *Commonwealth v. Bullock*, 913 A.2d 207, 218 (Pa. 2006), *cert. denied sub nom. Bullock v. Pennsylvania*, 550 U.S. 941 (2007).

Based on our review of the record, we find that the trial court did not abuse its discretion when it permitted the Commonwealth to introduce evidence of robberies in which appellant allegedly participated in the State of Delaware. Indeed, as noted in detail *supra*, the Commonwealth demonstrated that the prior bad acts evidence established appellant's identity pursuant to Rule 404(b). Because the trial court instructed the jury three times that the evidence of appellant's alleged involvement in the Delaware bank robberies could not be used in determining appellant's guilt with regard to the Pennsylvania bank robberies at issue here, we hold that the probative value of the evidence presented by the Commonwealth exceeds its potential for prejudice. Pa.R.E. 404(b)(3); *Briggs*, 12 A.3d at 336-337; *Aikens*, 168 A.3d at 143. Accordingly, appellant's first issue is without merit.

In his second issue, appellant contends that the trial court imposed an illegal sentence when it imposed two consecutive sentences for two convictions of conspiracy to commit robbery. (Appellant's brief at 11.) The Commonwealth does not oppose remanding the case for the purposes of resentencing. (Commonwealth's brief at 25.)

Preliminarily, we note that appellant failed to include this issue in his Rule 1925(b) concise statement of errors complained of on appeal. Generally, such a failure would result in waiver of the issue on appeal. *Commonwealth v. Smith*, 210 A.3d 1050, 1059 (Pa.Super. 2019), *appeal denied*, 218 A.3d 1199 (Pa. 2019), citing Pa.R.A.P. 1925(b)(4)(ii). Challenges to the legality of sentence, however, are non-waivable and may be raised at any time, so long as the reviewing court has jurisdiction. *Commonwealth v. Wood*, 208 A.3d 131, 136 n.9 (Pa.Super. 2019) (*en banc*). Accordingly, we shall proceed to review appellant's second issue on the merits.

"A challenge to the legality of sentence is a question of law; our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Alston*, 212 A.3d 526, 528 (Pa.Super. 2019), citing *Commonwealth v. Cardwell*, 105 A.3d 748, 750 (Pa.Super. 2014), *appeal denied*, 121 A.3d 494 (Pa. 2015).

Section 903 of the Crimes Code provides that "[i]f a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa.C.S.A. § 903(c). In *Commonwealth v. Lore*, 487 A.2d 841, 855 (Pa.Super. 1984), this court held that in cases where a defendant is convicted of multiple counts of conspiracy, he or she may only be sentenced on one count if "there were multiple criminal objectives of a

continuous conspiratorial relationship and each [criminal objective] was a component of the larger common design."

Here, appellant was charged and convicted of one count each of conspiracy to commit robbery (threat of immediate serious bodily injury) and conspiracy to commit robbery (demand money from a financial institution). The trial court sentenced appellant to consecutive sentences of 5-10 years' imprisonment for appellant's convictions of conspiracy to commit robbery (threat of immediate serious injury) and conspiracy to commit robbery (demand money from financial institution). (Notes of testimony, 9/20/17 at 5.)

Based on our review of the record, we find that appellant participated in one continuous conspiratorial relationship. Indeed, appellant's co-conspirator, Mr. Wisler, testified that there was one agreement that covered the series of bank robberies committed by appellant. (Notes of testimony, 12/6/16 at 296, 355, 359-360.) Further, the trial court referenced a single conspiracy in its preliminary comments prior to imposing its sentence. (Notes of testimony, 9/20/17 at 3.) Accordingly, we find that appellant engaged in a single conspiracy to commit multiple crimes; therefore, he should have been sentenced for only one count of conspiracy. *See Lore*, 487 A.2d at 855. Because our decision upsets the overall sentencing scheme of the trial court, as our action affects the length of appellant's aggregate sentence, we remand for resentencing, while affirming appellant's convictions. *See*

*Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa.Super. 2006), *appeal denied*, 946 A.2d 687 (Pa. 2008), citing *Commonwealth v. Williams*, 871 A.2d 254, 266-267 (Pa.Super. 2005) (requiring remand for trial court to restructure its sentence in cases where appellate disposition upsets trial court's overall sentencing scheme).

On February 18, 2020, appellant filed an application for substitution of appointed counsel. We deny appellant's application without prejudicing appellant from seeking relief with the trial court.

Judgment of sentence vacated. Convictions affirmed. Remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/3/20</u>